(No. 34852.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MARQUESS F. RUSSELL, Plaintiff in Error.

*Opinion filed September 24, 1959.*

MILTON A. FISCHER, of Rockford, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN A. STROM, State's Attorney, of Belvidere, (FRED G. LEACH, and WILLIAM H. SOUTH, Assistant Attorneys General, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

Marquess F. Russell, Herschel Adams and Richard Deemter were indicted for burglary. Russell was tried alone before a jury, was convicted, and was sentenced to a term of not less than three nor more than ten years in the penitentiary. The question that has given us most concern, upon this writ of error to review his conviction, is the sufficiency of the proof to establish his guilt beyond a reasonable doubt.

The Spirit of '76 Tavern outside of Belvidere was burglarized on August 1, 1957. Russell and his co-indictees had been drinking in the tavern, and when it was closed about 12:45 A.M on August 1, they were let out by the back door. The bartender then cleaned the bar, locked the doors and windows, and left between 1:00 and 1:30 A.M.

About 1:30 A.M. two cruising deputy sheriffs saw a station wagon parked close to the tavern without lights. While the officers circled the tavern to investigate, the station wagon left. They pursued it, at speeds ranging up to 100 miles an hour, and curbed it after it had turned into Highway 20 without stopping for the stop sign. The defendant was alone in the station wagon. He told the offi-

cers that he was on his way to his home in Burlington, Wisconsin, and had parked near the tavern to rest. The officers took him to the sheriff's office, leaving his station wagon where it had been stopped.

At noon on August 1, the proprietor opened the tavern and found that it had been burglarized. The glass in the door had been broken near the lock. Coin operated machines and a juke box had been broken into and emptied. A case of whiskey and $103 in silver had been taken. Near the door were cases that had been filled with various bottles, and wastebaskets that had been filled with cigarettes. A pinch-bar, a "brake-adjusting tool" and a screwdriver were found in one of the wastebaskets inside the tavern.

There were other tools in the tire well of the defendant's station wagon, which was under a lid in the back of the car. These tools were shown to the defendant along with the tools found inside the tavern. The defendant identified them as his, and specifically identified as his the three tools found inside the tavern, including the one that he described as a "brake-adjusting tool."

After the burglary had been discovered the defendant told the officers a different story. He said that he and his two companions had been drinking in the tavern all evening; that they left about closing time and drove to Belvidere for something to eat but found the restaurants closed. They then returned to the tavern where he let his companions out to get some drinks while he parked nearby. When he saw the squad car he "decided he would get out of there."

Upon this record the jury could properly find the defendant guilty beyond a reasonable doubt. The tavern was burglarized. The defendant had returned to the tavern although he knew it was closed. The burglars had to use tools to break into the coin operated machines, and defendant's tools were found inside the tavern. Conditions inside the tavern indicated that the burglars were inter-

rupted before their work was completed. The defendant's car was parked without lights where he could serve as a look-out, and the car was in position for a quick get away. When the police car approached he fled in a manner that indicated a determined effort to escape apprehension. After he had been caught he told contradictory stories to explain his presence at the tavern.

It is true that there is no proof that either he or his companions were inside the tavern a second time after they were let out at closing time. But a conviction can be sustained upon circumstantial evidence as well as upon direct. *People* v. *Hansen*, 5 Ill.2d 535; *People* v. *Weiss*, 367 Ill. 580; *People* v. *Schullo*, 360 Ill. 580.

It is possible, of course, to conjure up hypotheses that are inconsistent with the defendant's guilt as accessory or principal, as it is in any case in which judgment rests on circumstantial evidence. The defendant's flight might not have been caused by his consciousness of guilt, or by his consciousness of guilt of this offense. So, too, one or the other of the contradictory stories that he told to account for his presence at the tavern might have been true, or there might even be a different and unknown explanation consistent with his innocence. His tools, which were found inside the burglarized tavern, might have been taken from his car without his knowledge, either by his co-indictees or by someone else.

But the requirement that the defendant's guilt be proved beyond a reasonable doubt does not mean that the jury must disregard the inferences that flow normally from the evidence before it. Here all of the inferences from the evidence pointed toward the defendant's guilt. The jury was not required to search out a series of potential explanations compatible with innocence, and elevate them to the status of a reasonable doubt.

The defendant also urges that the judgment should be reversed because the sheriff was permitted to testify as a

witness for the prosecution. At the outset of the trial, upon defendant's motion, the court had ordered all witnesses excluded from the courtroom. The sheriff was in charge of the jury, and was present during the entire trial. Despite the fact that he was custodian of the jury, and the further fact that he had been present while other witnesses testified, he was called and testified as a witness for the prosecution. On both grounds this action was improper. (*People* v. *Botulinski*, 383 Ill. 608, 617; see *Gainey* v. *People*, 97 Ill. 270.) But the sheriff's name was endorsed upon the indictment so that the defendant knew that he was a prospective witness. Nevertheless no objection was made when he was called as a witness. The question was first raised in the defendant's motion for a new trial, and then no effort was made to show any improper conduct on the part of the sheriff as custodian of the jury. In the absence of timely objection, or a showing of prejudice, the error does not require reversal.

The judgment is affirmed.

*Judgment affirmed.*