The People of the State of Illinois, Plaintiff-Appellee, v. Davis McCracken, Defendant-Appellant.

### Gen. No. 51,015.

First District, Fourth Division.

March 31, 1967.

Jason E. Bellows, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James B. Zagel, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

CHARGE: Burglary.[1]

DEFENSE AT TRIAL: Plea of not guilty.

. JUDGMENT: After a bench trial, the court found defendant guilty and imposed a sentence of not less than two nor more than four years.

---

[1] Ill Rev Stats 1965, c 38, § 19-1. Burglary.

(a) A person commits burglary when without authority he knowingly enters into, or without authority remains within a building, housetrailer, watercraft, aircraft, railroad car, or any part thereof, with intent to commit therein a felony or theft.

(b) Penalty. A person convicted of burglary shall be imprisoned in the penitentiary for any indeterminate term with a minimum of not less than one year.

POINT RAISED ON APPEAL: The defendant was not proved guilty beyond a reasonable doubt.

TESTIMONY OF STATE WITNESSES: Frank Stefan testified that he was the janitor in a building at 933 Hyde Park Boulevard, in Chicago, and lived in the basement apartment at that address; that on June 4, 1965, he left the apartment about 1:00 p. m.; that when he returned at 6:00 p. m., he found his back door standing open, and the window next to it broken. A search of his apartment disclosed that two 12-gauge shotguns, one .22 caliber rifle, a radio, sewing machine, about $30 in coins, and a set of laundromat keys were missing. The condition of the door to the apartment indicated that it had been pried open. Stefan testified that he called the police, and made an inspection of the building. He explained that the laundry room is located in the center of the basement and could be reached from Stefan's apartment only by going out of Stefan's back door, traveling through an open gangway about 30 yards long. The laundry room could also be reached by going through a door from the alley leading into the boiler room. Stefan testified that in the laundry room he discovered the three guns behind an old door which leaned against the wall; that the guns were wrapped in a baby's blanket which had been taken from the room of Stefan's baby; that after he found the weapons he showed them to certain police officers, one of whom remained on watch with him until midnight at the place where the guns were found. He testified that he was on watch alone, armed with one of the shotguns, at about 1:30 a. m., when he heard the door of the boiler room open, adjacent to the laundry room, then heard steps coming through the boiler room into the laundry room. He testified that the defendant "went for that door, dodged the door and wanted to grab whatever is behind it. He went for the stuff." Stefan testified that

292

he then placed the defendant under arrest and caused the police to be called; they arrived and took the defendant into custody; the defendant at that time denied committing the burglary and told the police he went into the basement to relieve himself. Stefan testified that there was a light hanging in the center of the laundry room, and that from the time the defendant passed through the door into the boiler room he had to travel 40 feet to get to the laundry room, and to get through the laundry room to where the door was lying against the wall, he had to travel another 15 or 20 feet.

Thelma Mathews testified that she lived at 939 East Hyde Park Boulevard, the same building in which the alleged burglary occurred; that on June 4, at about 1:30 or 2:00 p. m., she noticed a man coming out of the alleyway; that he had some things in his arm and a machine case in the other arm; that he went across the street, got into a taxi and drove away. She stated that she did not get a good look at the man and does not think she could identify him; that the defendant looked like him only in height; that the man was a Negro, but she didn't notice whether he was light or dark skinned.[2]

Grace Willis testified that she lived at 933 East Hyde Park Boulevard; that on June 4, at about 2:00 p. m., she was talking through her front window to Mrs. Mathews when she saw a man carrying a portable machine case and a blue package. She stated that "he started to pass my window and he looked at Mrs. Mathew and then backed up and went back to this alley and ran across the street and got into a cab." She further testified that she did not get a good look at the man, and while she could tell he was not white, she could not tell whether he was light skinned or dark.

---

[2] Defendant was a Negro.

Walter Brown, a police officer, testified that on June 4, 1965, he went to Stefan's home, arriving there at about 1:25 or 1:30 in the morning; that when he got there McCracken was in custody; that he questioned the defendant, who said he had only gone to the basement to relieve himself.

TESTIMONY FOR THE DEFENSE: Davis McCracken testified as follows: On June 4, 1965, he was living at 6220 Greenwood Avenue in the City of Chicago; at about 1:30 a. m., on June 5, 1965, he was in the vicinity of 933 Hyde Park Boulevard in the back of the alley. He had gone there to see a girl in the neighborhood, who was not at home. On cross-examination he gave the name of the girl, but did not know her address, except that it was around the corner from the 933 Hyde Park building. He testified that there was a big light in front of the building and a car was parked there; that he had gone to the alley to urinate, had stepped down in the basement, then walked over to the corner, at which time Stefan opened the door, put a gun on him and told him to come with him. He stated that Stefan then told his wife to call the police, and that when they arrived and asked why he was in the basement, the defendant told the police the same thing. He testified that he did not go into the basement at all, ·that he only walked down the steps in the corridor, and was there when Stefan opened the door. He denied that he was in the laundry room or that he went towards an old door in the room; he denied that he at any time entered Stefan's apartment or took anything from it. On cross-examination he denied that he walked 30 feet into the laundry room; that instead, he was standing in a dark area and could not see into the basement because there was a closed door there and nobody inside the basement could see him, either.

The defendant further testified that he had been at the Armour Soap Company about 12:30 or 1:00 p. m., that day; that he went there to seek employment; that afterwards he went to 47th Street, looking for a man called "Snookum Baby" who was to help him find work, but did not find him. The defendant did not remember the names of any of the people to whom he talked.

OPINION: The defendant contends that the only evidence in the record adduced by the State to prove his guilt was circumstantial, and he argues that to justify a conviction, circumstantial evidence must be of such nature as to produce a reasonable and moral certainty that the accused committed the crime, and where the circumstances can be explained upon a reasonable hypothesis consistent with innocence and leave a grave and serious doubt of guilt, a conviction cannot stand.

In this case there was no question that a burglary had been committed in the premises of the complaining witness, Stefan, nor that among other things taken from the apartment in the course of the burglary were two shotguns and a rifle. There is no contradiction in the record that Stefan found these articles in the laundry room concealed behind a door leaning against the wall, wrapped in a blanket taken from Stefan's baby's room. The only place where there is a sharp conflict in the evidence is in the question of whether or not the defendant, as Stefan testified, entered the basement door, walked through the boiler room into the laundry room and went directly to the place where the guns were concealed. The distance, as was pointed out, was about 40 feet.

 If the trial court believed the testimony of Stefan, the circumstantial evidence would be sufficient to prove the guilt of the defendant beyond a reasonable doubt. If, on the other hand, the trial court believed the testimony of the defendant that he did not go

295

through the door into the boiler room and that he was standing outside that door at the time Stefan apprehended him, then, of course, there could be no conviction. The case depends upon the credibility of the witnesses, which is essentially a matter for the trial court. As stated in People v. Scott, 34 Ill2d 41, 213 NE2d 521:

> ". . . it is the function of the trial court to determine the credibility of the witnesses and the weight to be accorded their testimony, and where the evidence is merely conflicting, this court will not substitute its judgment for that of the trier of fact. People v. Clark, 30 Ill2d 216; People v. McCreary, 29 Ill2d 295; People v. Dillon, 24 Ill2d 122."

During the oral argument defendant's counsel correctly pointed out that the defendant was charged with burglary of Stefan's apartment and not of the laundry room. Counsel argued that even if the testimony of Stefan was believed, the defendant could have been an innocent messenger who was instructed to pick up the articles, and that the circumstances were therefore consistent with innocence and left a doubt as to defendant's guilt. This argument is not substantiated by the evidence. Stefan's testimony is that the defendant entered the boiler room, went into the laundry room, then, like a homing pigeon, went directly to the place where the guns had been concealed. The defendant categorically denied that he went through the doorway into the basement at all, and consequently, there is no explanation whatsoever of his conduct, if the trier of the fact believed—as he apparently did—the testimony of Stefan. Under these circumstances the only inference which could be drawn is that the defendant burglarized Stefan's apartment and later went to the laundry room for the purpose of retrieving the guns which he had taken

from Stefan's apartment and hidden behind the door in the laundry room.

■ In People v. Russell, 17 Ill2d 328, 161 NE2d 309, which is particularly applicable to the case before us, the court said:

> ". . . a conviction can be sustained upon circumstantial evidence as well as upon direct. People v. Hansen, 5 Ill2d 535; People v. Weiss, 367 Ill 580; People v. Schullo, 360 Ill 580.
>
> "It is possible, of course, to conjure up hypotheses that are inconsistent with the defendant's guilt as accessory or principal, as it is in any case in which judgment rests on circumstantial evidence. The defendant's flight might not have been caused by his consciousness of guilt, or by his consciousness of guilt of this offense. So, too, one or the other of the contradictory stories that he told to account for his presence at the tavern might have been true, or there might even be a different and unknown explanation consistent with his innocence. His tools, which were found inside the burglarized tavern, might have been taken from his car without his knowledge, either by his co-indictees or by someone else.
>
> "But the requirement that the defendant's guilt be proved beyond a reasonable doubt does not mean that the jury must disregard the inferences that flow normally from the evidence before it. Here all of the inferences from the evidence pointed toward the defendant's guilt. The jury was not required to search out a series of potential explanations compatible with innocence, and elevate them to the status of a reasonable doubt."

■ DECISION: In our opinion the defendant in the instant case was proved guilty beyond a reasonable

doubt, and the judgment of the Circuit Court is affirmed.

Affirmed.

ENGLISH, P. J. and DRUCKER, J., concur.