THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT G. MERKEL, Defendant-Appellant.

(No. 73-216;

Second District—November 7, 1974.

Frank Wesolowski, Jr., Public Defender, of Wheaton (Robert H. Heise, Assistant Public Defender, of counsel), for appellant.

John J. Bowman, State's Attorney, of Wheaton (Ralph J. Gust, Jr., Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

The defendant, Robert G. Merkel, was found guilty by a jury of the murder of his wife and sentenced to the penitentiary for 30-90 years. In this appeal the defendant contends the following:

> (1) that he was not proven guilty beyond a reasonable doubt of the offense of murder,
>
> (2) that the court erred in refusing to instruct the jury that they should not find the defendant guilty of murder unless the facts exclude every reasonable theory of innocence,
>
> (3) that the court erred in not suppressing a statement made by him at the hospital,
>
> (4) that the prosecutor's closing arguments were so prejudicial as to deprive him of a fair trial and,
>
> (5) that the sentence imposed upon him was excessive.

The defendant and his wife, Jesse Merkel, were separated and divorce proceedings were to be heard on November 14, 1972. Jesse Merkel and her three children were residing with her sister in Elmhurst. On the morning of November 13 the decedent left her sister's residence with the three children to drive them to school. She stopped at her home around 9 in the morning, parked her car in the driveway and entered the premises. A scream was heard and the defendant was seen running from the back door. The three children and a neighbor attempted to get into the residence but were unsuccessful. The police were called and they broke the basement door down and entered the premises together with a Mrs. Stevens, the neighbor, and Mrs. Koprowski, decedent's sister. The body of Jesse Merkel was found in the hallway. There was a pool of blood in the kitchen and blood extended from that point to where the body was found in the hallway. A pair of eyeglasses were recovered in the pool of blood in the kitchen. These were subsequently identified as the de-

fendant's eyeglasses. The decedent had been shot in the head and died within 48 hours without regaining consciousness.

The attorney for the defendant contacted the Elmhurst Police Department shortly thereafter and advised the police that the defendant was being taken to the Forest Hospital in Des Plaines. Police officers went to the hospital where they met the defendant in the parking lot. Sgt. Holder asked the defendant if he knew why they were there and the defendant answered, "Yes." He was asked if he had a weapon on his person and he replied, "No." Sgt. Holder then read to the defendant his *Miranda* warnings in the hospital. The defendant replied that he understood the warnings. The defendant was asked where the gun was and he replied that he had thrown it away as he was driving towards Chicago. At this point the defendant terminated questioning until his attorney was present. At the trial the defendant did not testify.

We consider first the contention of the defendant that the State failed to establish his guilt beyond a reasonable doubt. At the outset it is to be noted that Peter Bianco, the attorney for the defendant, on the day of the shooting, called the Elmhurst Police Department, talked to officer Thomas Hanlan and the attorney inquired about Mrs. Merkel's condition and volunteered the information that the defendant was on his way to the Forest Hospital. The attorney further stated that the police would not have any trouble in apprehending the defendant as he seemed docile. Officer Hanlan had not mentioned that the police were looking for Mr. Merkel when attorney Bianco called the police department. Christine, one of the three children of the decedent and the defendant, was in the car at the time of the shooting and heard her mother scream. She then saw the defendant running from the back door of their residence. Two other witnesses saw the defendant running from the Merkel residence. Likewise, the glasses of the defendant were found in or next to the pool of blood in the kitchen from which point the body apparently had been dragged into the hallway.

In addition to the above, a party stating that he was the defendant called his place of employment and stated that he would not be in to work on the day in question. Likewise, further testimony adduced at the trial indicated that the defendant had inquired about the obtaining of a gun from a fellow worker about a month before the murder. On the day in question the motor vehicle of the defendant was not parked at the residence of the parties, apparently having been parked away from or to the rear of the premises. The estrangement of the parties and the fact that a hearing was set on the divorce proceedings for the day after the killing was presented to the jury.

The defendant contends that there was a reasonable hypothesis aris-

ing from the evidence which was consistent with the defendant's innocence and which would leave a reasonable doubt as to his guilt. In support of this contention he theorizes that the decedent could have brought the gun to the premises; that another possibility would be a third person being present; that in view of their marital problems the death might have been accidental resulting from a scuffle and that the defendant fled in fear. The supreme court in *People v. Russell* (1959), 17 Ill.2d 328, 331, 161 N.E.2d 309, 311, stated that it was possible, of course, to conjure up hypotheses which might be inconsistent with the defendant's guilt. The court went on to state:

"But the requirement that the defendant's guilt be proved beyond a reasonable doubt does not mean that the jury must disregard the inferences that flow normally from the evidence before it. Here all of the inferences from the evidence pointed toward the defendant's guilt. The jury was not required to search out a series of potential explanations compatible with innocence, and elevate them to the status of a reasonable doubt."

In *People v. Bernette* (1964), 30 Ill.2d 359, 367, 197 N.E.2d 436, 441, the supreme court stated:

"However, a conviction may be sustained upon circumstantial evidence as well as direct evidence, (*People v. Russell*, 17 Ill.2d 328,) it being necessary only that the proof of circumstances must be of a conclusive nature and tendency leading, on the whole, to a satisfactory conclusion and producing a reasonable and moral certainty that the accused and no one else committed the crime."

The court then concluded that under the facts of that case that they did not see how the jury could have reached any other conclusion than it did.

■■ We find the same situation to prevail here and we adopt the reasoning of *People v. Marino* (1970), 44 Ill.2d 562, 580, 256 N.E.2d 770, 780, where that court considered a conviction based upon circumstantial evidence as well as direct evidence and the court stated:

"[I]t is sufficient if all the evidence, taken together, satisfies the jury beyond a reasonable doubt of the accused's guilt."

■■ Considering all the evidence herein, and we do not feel it is necessary to determine whether the same is circumstantial or direct, we briefly have the following: the decedent went to the home of the parties, a scream was heard, the defendant was seen running from the premises, the house was locked and within moments the decedent was found with a bullet through her head. No gun was found in the house and the defendant stated that he had thrown a gun away on his way to Chicago. We fail to see how the jury could have found other than the defendant

was guilty beyond a reasonable doubt. It is true, of course, as is the situation in the case of many, if not most, homicides, that there was no actual eyewitness to the shooting. That does not mean that guilt of the defendant may not be proved by the facts and circumstances which indicate, beyond a reasonable doubt, that he is the perpetrator of the crime of murder.

■■ The second contention of the defendant is closely allied to the first argument and is based on the fact contended for by the defendant that the proof of guilt herein is entirely circumstantial. Defendant, therefore, contends that the trial court committed reversible error when it refused to give IPI-Criminal Instruction #3.02 in its entirety when all of the evidence was circumstantial. The instruction tendered by the prosecution and given by the court was as follows:

> "Circumstantial evidence is the proof of facts or circumstances which give rise to a reasonable inference of other facts which tend to show the guilt or innocence of [the] defendant. Circumstantial evidence should be considered by you together with all the other evidence in the case in arriving at your verdict." (IPI—Criminal #3.02 (1968).)

As in *People v. Holt* (1972), 7 Ill.App.3d 646, 288 N.E.2d 245, counsel for the defendant objected and contended that the instruction was improper because it did not contain the following additional paragraph:

> "You should not find the defendant guilty unless the facts and circumstances proved exclude every reasonable theory of innocence." (IPI—Criminal #3.02 (1968).)

As in *Holt*, a lengthy discussion took place herein between counsel for the defendant, counsel for the State and the court. The court refused to give the second part of this instruction. However, counsel for the defendant did not tender the proposed instruction containing the second part of IPI—Criminal #3.02. These identical questions were raised again in *People v. Lenker* (1972), 6 Ill.App.3d 335, 285 N.E.2d 807. In substance, in both *People v. Holt, supra,* and *People v. Lenker, supra,* the two courts came to the same conclusion. That is that the failure of the trial court, if it were error, to give the second part of IPI—Criminal #3.02 does not require reversal unless it appears that justice has been denied or that the verdict resulted from such error. As the court said in *People v. Holt* (1972), 7 Ill.App.3d 646, 651, 288 N.E.2d 245, 250:

> "Circumstantial evidence is legal evidence and a conviction based upon circumstantial evidence may be sustained just as if the conviction were based upon direct evidence."

In both cases the courts found, as we do here, that the record reveals no reasonable theory of innocence arising from the evidence adduced

at this trial. We therefore conclude that the failure of the trial court to give the complete instruction defendant complains of neither denied him justice nor did it in any way influence the jury as to his guilt based upon the evidence before them.

A conviction based upon circumstantial evidence must be based upon facts and circumstances of such conclusive nature as to lead on the whole to one conclusion, and that is to produce a reasonable and moral certainty that the accused and no one else committed the crime in question or, phrasing it differently, it is sufficient if all the evidence taken together satisfies the jury beyond a reasonable doubt as to the guilt of the defendant. In considering a case involving circumstantial evidence of defendant's guilt similar to the instant case, the court in *People v. Fetterman* (1973), 14 Ill.App.3d 120, 131, 302 N.E.2d 218, 226, stated:

> "A jury's determination of a defendant's guilt will not be set aside by a reviewing court unless it is so unsat'sfactory as to cause a reasonable doubt of his guilt. (*People v. Tribbett* (1968), 41 Ill. 2d 267, 242 N.E.2d 249.) Fetterman's conviction was based on circumstantial evidence. There is no distinction in law between direct and circumstantial evidence. Circumstantial evidence is legal evidence and it is accorded the same weight and effect as direct evidence. A conviction based on circumstantial evidence will be sustained when the evidence is of such a convincing character that it satisfied the jury and the reviewing court beyond a reasonable doubt that the defendant committed the crimes of which he is accused."

Considering all of the evidence previously mentioned herein, we find no reason as to how the jury might entertain a reasonable hypothesis that the defendant did not commit the crime in question.

■■■ The defendant admits that he received the proper *Miranda* warnings; however, he contends that he was incapable of knowingly and intelligently waiving his rights as he was emotionally upset and that his answers were hesitant and unsure. After the *Miranda* warnings were given to the defendant in the hospital the police officer asked the defendant what had been done with the gun. The defendant replied that he had thrown it from his car while driving on the John F. Kennedy Expressway towards Chicago between Mannheim and California Avenues. At this point the defendant indicated that he did not wish to answer any more questions and no further questions were asked. The issue, therefore, presented is whether or not the statement by the defendant that he threw a gun from the window of the car shortly after the murder was admissible. The defendant contends, as indicated, that he was so emotionally upset that this statement should not have been admitted. The defendant

further contends that if there were a waiver by the defendant of his rights that it was involuntary in nature and, lastly, that the questions should not have been asked without the presence of the defendant's attorney. Examination of the record does not disclose any evidence that the defendant did not understand the nature of the *Miranda* warnings nor do we find that the defendant's response as to the disposition of a gun was other than voluntary. While it may well be true that the defendant was, in fact, emotionally upset, that does not in itself create a situation where he may not be queried after he has been given the proper warnings. Defendant further contends that no questions should have been asked the defendant by the police officer if, in fact, the police knew the defendant was represented by counsel. No authority is cited for this proposition nor are we familiar with any. The defendant was given the *Miranda* warnings and the one question was asked as to where the gun was. The officer stated that he did this so that the gun would not fall into the hands of somebody who might be hurt by the same. We do not consider it trickery or cajolery that would vitiate the voluntariness of the statement. Immediately, when the defendant stated he did not wish to answer any more questions, no more questions were asked of him by the officers. We, therefore, find that the motion to suppress the one statement relative to the gun was properly denied.

■■ The defendant next states that the prosecutor's closing argument denied the defendant a fair trial. It is to be specifically noted that no objection was made at the trial to the closing argument of the prosecution. We have examined the record carefully and find that the statements made by the prosecution, while in certain instances may not be technically correct, in substance we do not believe that they in any way were a deliberate misstatement of facts. We do not find them to be so prejudicial, even when considered as to their cumulative effect, as to deprive the defendant of a fair trial, nor do we find that the cases cited in support of this contention by the defendant are in point. The counsel for the defendant has stated that it is a well established rule in Illinois that generally, if an error is not preserved by an objection and a court ruling not made thereon, the defendant may not raise the error on appeal. He states, however, that where the prosecutor's argument is seriously prejudicial that this court may consider the same even though no objection was interposed in the trial court. (*People v. Moore* (1956), 9 Ill.2d 224, 137 N.E.2d 246; *People v. Fort* (1958), 14 Ill.2d 491, 153 N.E. 2d 26.) We do not find that those cases are factually applicable to the prosecutor's argument complained of herein. Defendant further states there are two tests to determine if the prosecutor's remarks were so highly prejudicial as to deny the defendant of a fair trial and that the

same may be considered even though no objection was made at the trial. In support of this statement the defendant has cited *People v. Weinstein* (1966), 35 Ill.2d 467, 220 N.E.2d 432. Factually, *Weinstein* is readily distinguishable from the instant case. In *Weinstein* 17 objections were made to the prosecutor's argument to the jury. The court went on to hold that in some instances objections were not made, but the court would consider the improper arguments not objected to where (1) the evidence is evenly balanced, or, (2) where the nature of the argument is such as to deprive the accused of his constitutional rights. In the case before us we do not find that the evidence is evenly balanced; on the contrary, we find the evidence to be overwhelming as to the guilt of the defendant. Likewise, as indicated, examination of the statements of the prosecution are not so prejudicial as to deprive the defendant of his constitutional rights. As a matter of fact, the errors assigned to the arguments of the prosecution are comparatively minor in nature or are substantially corroborated by the evidence, an example being where the prosecution comments on the defendant contacting his attorney prior to the apprehension of the defendant. This was in evidence that the defendant had contacted his attorney and it was in evidence that the attorney had called the police and advised the police where the defendant was, that he was docile and that they would have no problem in apprehending him. Additionally, the defendant's counsel referred to this in his closing argument, which was then commented upon by the prosecution in rebuttal.

Lastly, the defendant contends his sentence was excessive. As we have indicated numerous times, and as the court has stated, with relation to sentences imposed, this court will not substitute its judgment for that of the trial court where there is no obvious abuse of discretion. *People v. Lane* (1974), 2nd Dist., Docket No. 72-166; *People v. Sprinkle* (1974), 56 Ill.2d 257, 264, 307 N.E.2d 161; *People v. Allen* (1974), 56 Ill.2d 536, 309 N.E.2d 544.

The judgment of the trial court is affirmed.

T. MORAN, P. J., and SEIDENFELD, J., concur.