THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MARTIN L. HAMMERS, JR., Defendant-Appellant.

Fourth District No. 12592

Opinion filed January 29, 1976.

Richard F. Wilson and John L. Swartz, both of State Appellate Defender's Office, of Springfield, for appellant.

Edwin R. Parkinson, State's Attorney, of Jacksonville (G. Michael Prall, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

In a trial by jury before the Circuit Court of Morgan County defendant Martin L. Hammers, Jr., was found guilty of the murder of Rose Ann Charapata. He was subsequently sentenced to a term of 50 to 150 years' imprisonment. Upon appeal he contends that the court erred in denying his motion to suppress a search warrant and the evidence seized pursuant thereto, that the court erred in giving and refusing certain instructions, and that he was not proved guilty beyond a reasonable doubt.

■■ The substance of defendant's motion to suppress was that the verified complaint upon which the warrant was issued was insufficient to show probable cause that defendant committed the murder or possessed the .38-caliber pistol sought to be seized. The People maintain that the denial of the motion would have been proper even if the complaint was insufficient because the defendant put on no evidence in support of his motion. "Probable cause for the issuance of a search warrant must be found in the complaint for the warrant." (*People v. George*, 49 Ill.2d 372, 377, 274 N.E.2d 26, 29.) Since the complaint was before the court, defendant did not need to put on any evidence to support his motion. *People v. Considine*, 107 Ill.App.2d 389, 246 N.E.2d 81.

The language of the affiant in the complaint upon which the search warrant was issued stated in pertinent part:

"That on or about the 10th day of July, 1973, at about the hour of 4:00 a.m., he verily believes that the offense of murder was committed, and affiant states (set forth facts sufficient to show probable cause for the issuance of a search warrant): that he has probable cause to believe that a .38 caliber pistol is within the premises of 1129 Illinois Avenue, Jacksonville, Illinois, because at approximately the time above mentioned Rose Ann Charapata was killed with a .38 caliber pistol on Johnson Street. In talking with an eyewitness to the shooting, it was told that the person who shot the victim was riding a bicycle with the victim seated behind him. Today, the affiant interviewed a person who talked with Martin Hammers for about one hour between 2:00 a.m. and 3:00 a.m. on the night just mentioned at a location five blocks from the murder scene, at which time Martin Hammers asked the person if she was afraid to be shot.

During the conversation Hammers tried to get into her house but

she would not allow it. While these two persons stood on the porch on Railroad Street, the victim walked past the house twice, and Hammers asked who the girl walking was. After the victim passed the house on foot the second time the informant told me that Hammers got on his bicycle and left her house.

The informant says that she went into her house, looked out a window and saw Martin Hammers on his bicycle alongside the victim proceeding together over the railroad tracks at the corner of Howe Street and Railroad Street, six blocks from the murder scene. The affiant has never received information in the past from this informant, but he considers her to be reliable since time elements, description, location and the fact that the murderer was on a bicycle all coincide with this investigation.

The fact about the bicycle has not been published nor did this affiant tell the informant that the murderer was on a bicycle. Martin Hammers resides at 1129 Illinois Avenue, Jacksonville, Illinois, wherein I believe a .38 caliber pistol will be found and asks that the Judge may issue a Search Warrant for the seizure of the following:

a .38 caliber pistol,

and ask that said Warrant shall issue for the search of the following particularly described place or person or both:

A white one-story wood frame house and outdoor toilet structure and a yellow 1969 Pontiac GTO automobile located at 1129 Illinois Avenue, Jacksonville, Illinois."

The affiant appears to be a police investigator or officer. The complaint consists mostly of his hearsay assertions of conversations he had with two unnamed informants. In *United States v. Harris,* 403 U.S. 573, 579, 29 L.Ed.2d 723, 731, 91 S.Ct. 2075, 2080, the plurality opinion stated: "A policeman's affidavit 'should not be judged as an entry in an essay contest' " (citing Fortas, J., dissenting in *Spinelli v. United States,* 393 U.S. 410, 438, 21 L.Ed.2d 637, 657, 89 S.Ct. 584, 600), "but, rather, must be judged by the facts it contains." The affidavit must, however, meet certain requirements as the court stated in *People v. Morrison,* 13 Ill.App.3d 652, 654, 300 N.E.2d 325, 327:

"The rules of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, state that when probable cause is based solely or partially upon an informant's information, there must be a detailing of the underlying circumstances showing why the informant's conclusions are believable, and why the informant is credible or reliable."

■■ The plurality opinion in *Harris* stated, and the dissent agreed, that if affiant's informants are shown to be eyewitnesses, the judicial officer to whom the complaint is presented may determine that the informants' conclusions are believable. In the instant case, both informants are shown to be eyewitnesses to the matters about which they reported. The issuing judge, thus, had ample grounds to find their conclusions believable. The question of the sufficiency of the complaint to show facts and circumstances from which he would find the informants to be reliable is more difficult.

The People contend that the affidavit meets this test because the statements of the informants corroborate each other. Each states that he or she saw the victim within a six-block area in the City of Jacksonville within an hour's time of each other. Each says that he or she saw the victim at this time in the presence of a person who had a bicycle at a time of night or early morning when few people would be on the street and fewer still would be there with a bicycle. One informant said that the person accompanying the victim shot her. The other informant said that the defendant was the person she saw with the victim and that prior to joining the victim, the defendant had asked that informant if she was afraid to die. The weight to be given to the corroboration is strengthened by the affiant's statement that the information about the presence of the bicycle had not been published nor had affiant given this information to informants. We are not advised, however, of any case that has passed on the question of whether corroboration of each of two unnamed informants by the other is a sufficient underlying circumstance to permit the judicial officer to whom the complaint is presented to conclude that the informants are credible.

In *Harris*, there was held to be a sufficient showing of reliability where the informant, in addition to being corroborated, made a declaration against penal interest. In *Jones v. United States*, 362 U.S. 257, 4 L.Ed.2d 697, 80 S.Ct. 725, a similar holding was made where the informant was not only corroborated but was also stated by the complainant to have given reliable information in the past. In *Spinelli* the court analogized the showing necessary to establish probable cause for an arrest without a warrant to that necessary to be made before a judicial officer for the issuance of a search warrant. In *People v. Hester*, 39 Ill.2d 489, 237 N.E.2d 466, the Supreme Court held that police officers had reasonable cause to make an arrest without a warrant based upon information given them by two named informants, part of which was a hearsay statement attributed to the deceased victim. The court stated, "* * * the usual requirement of prior reliability which must be met when police act upon 'tips' from professional informers does not apply

to information supplied by ordinary citizens." (39 Ill.2d 489, 514, 237 N.E.2d 466, 481.) Here, there is no direct statement in the complaint as to whether the informers were professionals or ordinary citizens. Every inference would indicate that they are ordinary citizens, for it would be inconceivable that one professional informant would happen to be nearby when the victim was killed and that the defendant would be talking to another professional informant about one hour before the crime at that informant's house.

In *Morrison* an informant was shown to be sufficiently reliable where she was stated to be the wife of the owner of guns sought to be seized, was able to set forth in great detail the location of the guns, and was corroborated by the statement of the complainant that he had earlier seen guns at that place. Also, in *United States v. Unger* (7th Cir. 1972), 469 F.2d 1283, *cert. denied*, 411 U.S. 920, 36 L.Ed.2d 313, 93 S.Ct. 1546, the complainant stated in the affidavit presented to the commissioner issuing the warrant that an unnamed informer had told him of the location of contraband guns in great detail as described in the affidavit. The court noted that the informant's information was not self-serving and there was no indication that it was given in spite. No reference was made in the affidavit to the reliability of the informer. On this point, the opinion stated that in *Harris* the United States Supreme Court had inferred that "the burden of satisfying the so called second prong of *Aguilar* was not as stringent as *Spinelli* had indicated." In *United States v. Bell* (5th Cir. 1972), 457 F.2d 1231, where the informants were identified, the court held that no requirement of showing reliability existed when the informants were eyewitnesses.

■■ In *People v. Jefferson*, 25 Ill.App.3d 445, 323 N.E.2d 495, the complaint stated that an unnamed citizen informer had told complainant that "narcotics were being used and sold" at the location in question. The informer's information was corroborated by the affiant's statement that he was a police officer, that he had recently seen persons he had previously arrested on narcotics charges entering the building in question, and that on two recent occasions he had been in a hallway in the building and had seen people at the door of an apartment therein exchange money for a tinfoil packet of the type used for the exchange of narcotics. The reliability of the informant was ruled to be shown by the corroboration alone. In the case under consideration, by all inferences, the informers were both citizens. Unlike the situation in *Jefferson*, the affidavit clearly showed them to be eyewitnesses to what they reported, one having seen the crime committed. The other spoke in nonconclusionary terms. There is no circumstance shown that would give any indication that either had spite toward the defendant or personal

gain to be expected from giving their information. Under these circumstances with the statements of each of the informants corroborating the other and the affiant making the conclusionary statement that the informers' information was corroborated by his investigation, the complaint states sufficient underlying facts and circumstances bearing on the reliability of the informants to meet the requirements of *Aguilar* and *Spinelli.*

The fact that the informant was named in *Morrison* was of importance because she was shown to be the wife of the defendant. None of the other cases cited place importance on this point. The issuing judicial officer is not aided by the name of an informant he does not know and cannot go outside the face of the complaint to determine the reliability of one that he does know.

■■ Defendant also argues that the complaint was insufficient to establish probable cause that he committed an offense and that there was a .38-caliber pistol at his home. The informants stated that the victim was shot by a person riding with her on a bicycle. It was stated that defendant was seen with her an hour before walking a bicycle and was then within six blocks of the place of the killing. Prior to joining the victim he is said to have asked one of the informants a morbid question as to whether she was afraid to be shot. All of these events are said to have occurred between the hours of about 3 and 4 a.m. when few people were likely to be on the street and fewer bicycles likely to be about. The complaint was sufficient to show probable cause that defendant shot and killed the victim, and, if so, it was reasonable for the issuing judge to infer that the weapon used might be at defendant's home nine days later.

■■ The proof of defendant's guilt rested on testimony similar to the statements of the informants as set forth in the complaint for a search warrant, on evidence that upon execution of the search warrant a .38-caliber revolver was found in defendant's closet at his home and, on testimony of a supervisor from the State Crime Laboratory that two bullets recovered from the victim's body had been fired from the weapon seized. Luke Marquardt, a 13-year-old boy at time of trial, testified that he was watching television at home between 3 and 4 a.m. in the early morning of July 10, 1973. Looking out the window, he saw two people pass on a bicycle. He looked again and saw the bicycle parked down the street and the two people going around in circles like they were dancing. They then went to the side of the road. The witness then saw some flashes and heard some shots or firecrackers. He turned to talk to his mother and then saw one person jump on a bicycle and leave. The boy's mother testified that she also heard the noise. Neither made

any report to the police at that time. The evidence was that the victim's body was found the next morning at the place where the people on the bicycle had gone to the side of the road. The doctor performing the autopsy gave the opinion that the victim died between 2:45 a.m. and 4:45 a.m. of gun shot wounds.

Anna Davis testified that she lived at 1214 East Railroad Street in Jacksonville. Defendant came to her house that early morning, but she would not let him in. They talked. At about 2:30 a.m. a girl walked by in the opposite direction. The girl had long hair and wore slacks. Defendant left at this time, and the witness testified that, watching from her home, she saw the defendant and the girl going over the nearby railroad tracks together. The defendant was then on his bicycle. Subsequent evidence disputed and supported the ability of the witness to see the girl and the defendant from her window if they were where she said. This point was clearly a question for the jury. Unlike the second informant in the complaint for a search warrant, this witness did not identify the girl who had passed by.

The evidence was that the victim had long hair and wore slacks on the evening and early morning of her death. Several witnesses testified that she left her apartment at about 2 a.m., and others testified that she was at the home of Margrit Scott, 1340 E. Railroad, at about 2:30 a.m. and left 15 minutes later (walking both ways). Mrs. Scott's home was east of the Anna Davis home which itself was east of the victim's apartment. The Scott and Davis homes were both in the general area of the city where the victim was killed.

When questioned by police, defendant had first denied that he had any revolvers. When confronted with the revolver that was found in his closet, defendant then said that he had not mentioned it because he had no permit for it.

Defendant's evidence consisted mostly of the testimony of Ralph Hammers, his 19-year-old brother, and Ann Hammers, his mother. The brother testified that he had been driving his car on the north side of town in the early morning hours of July 10, 1973. He noticed the defendant riding a bicycle. He stopped, put the bicycle in the trunk and drove the defendant home, arriving about 3 a.m. They ate and the witness went to bed. He thought he heard the defendant and his girl friend go to bed about 15 minutes later. He acknowledged that the defendant often rode around on a bicycle early in the morning and that the witness had taken the defendant home previously on similar occasions. He admitted that he could be thinking of another such occasion. Ann Hammers testified that she fell asleep watching television and was awakened about 2:50 a.m. on July 10, 1973, by hearing dishes rattling

and the defendant and Ralph Hammers talking in the kitchen. She remembered the night because defendant's girl friend had stayed there then.

The evidence was strong that a gun used to kill the victim was in defendant's closet nine days later. The jury could infer from the defendant's denial of the possession of the weapon that he had a guilty conscience. At about 3 a.m. defendant was seen with a girl fitting the description of the victim at a time that the evidence indicated that the victim had been in that neighborhood. He had a bicycle. About an hour later in the same general area of town, a witness saw two people ride by on a bicycle. After they stopped and engaged in unusual conduct which the witness described as dancing but which could have been scuffling, the witness heard shots and saw one of the two leave on the bicycle. A few hours later the victim's body was then found at the location of the shots. The jury was not required to believe the alibi testimony, and the evidence was sufficient for them to have found the guilt of the defendant to have been proved beyond a reasonable doubt.

Each of the sides tendered a version of IPI Criminal No. 3.02 (1968). The form of that instruction in its entirety states:

> "Circumstantial evidence is the proof of facts or circumstances which give rise to a reasonable inference of other facts which tend to show the guilt or innocence of [the] [a] defendant. Circumstantial evidence should be considered by you together with all the other evidence in the case in arriving at your verdict.
>
> [You should not find the defendant guilty unless the facts and circumstances proved exclude every reasonable theory of innocence.]"

The Committee Notes to that instruction state in part:

> "The second paragraph should be given only when the proof of guilty is *entirely* circumstantial." (Emphasis in original.)

The instruction tendered by the People contained only the first paragraph. The defendant, contending that the proof of guilt was entirely circumstantial, tendered the instruction in a form that contained both paragraphs. Each side objected to the instruction as tendered by the other side. The court gave the instruction in the form tendered by the People and refused the instruction tendered by the defendant.

We can find no decision of a court of review in this State that has held it to be error to refuse to include the second paragraph of IPI—Criminal No. 3.02 (1968) when giving the instruction. In most cases where the issue is raised, the court has ruled that the record revealed direct evidence of defendant's guilt. In *People v. Minish*, 19 Ill.App.3d

603, 312 N.E.2d 49, the defendant and one Peters were shown to have entered a gas station and asked for the rest room. They then left. Peters returned, produced a weapon, and with the threat of its use took money from the station operator. Defendant was seen waiting outside and, when Peters came out, left with him. Defendant testified that he had not agreed with Peters to commit a robbery and there was no direct evidence to the contrary. Considerable circumstantial evidence inferred the defendant's guilt as an accessory. The refusal to include the second paragraph of IPI—Criminal No. 3.02 (1968) in the instruction when it was given was held, on review, not to be error. In a comprehensive dissent, Mr. Justice Stouder maintained that the second paragraph of the instruction should be given in cases where the proof of guilt is largely circumstantial although there is some direct evidence of guilt. He illustrated the difficulty of defining the difference between direct and circumstantial evidence but conceded that the evidence of eyewitnesses as to Peters' acts in the gas station building was direct evidence although the defendant's involvement was established only by circumstantial evidence.

In *People v. Christiansen*, 118 Ill.App.2d 51, 254 N.E.2d 156, the testimony of a witness that he saw two men leave a building from a broken window and run, plus the testimony of the lessee of the building that cash was missing from the cash register, was held to be sufficient direct evidence to justify the refusal to give the second paragraph of the instruction although all of the evidence to tie the defendant to the crime was circumstantial.

In the instant case, an eyewitness saw two people go to the side of the road and heard a gun shot. One then left rapidly. As in *Christiansen*, further direct evidence of the *corpus delicti* came from the subsequent observation of a witness, here the testimony that the body of the victim was found several hours later in the spot from which the sound of the shots had come. The identity of the defendant as the person who fled was here, as in *Christiansen*, proved only by circumstantial evidence. We rule, however, that where, as here, the sole direct evidence is of the *corpus delicti*, the whole instruction should be given.

■■ The history of this instruction is that the courts of review of this State are extremely reluctant to rule that the failure to give the second paragraph of the instruction is reversible error. The committee notes are couched in terms limiting the times when it is permissible to give the second paragraph and not in terms of stating the times when that paragraph must be given. In *People v. Merkel*, 23 Ill.App.3d 298, 319 N.E.2d 77, it is stated:

"* * * the failure of the trial court, if it were error, to give the second part of IPI—Criminal No. 3.02 does not require reversal unless it appears that justice has been denied or that the verdict resulted from such error." (23 Ill.App.3d 298, 302, 319 N.E.2d 77, 80.)

(See also *People v. Mickelson*, 32 Ill.App.3d 813, 336 N.E.2d 806.) It does not appear to us that the verdict resulted from the refusal to give the second paragraph of the instruction nor does it appear that justice was denied. No reversible error occurred.

Defendant also maintains that the court erred in refusing to give defendant's tendered instruction No. 23 which stated:

"You are instructed that each juror on his oath must vote according to his own conviction, and if any juror has a reasonable doubt to the guilt of the accused in this case, the law authorizes him to refuse to abdicate his position so long as he entertains such reasonable doubt."

Defendant argues that in the absence of this instruction, the jury is not advised that each member must make an individual determination as to whether the guilt of the defendant has been proved beyond a reasonable doubt and has a privilege to adhere to that position.

The jury was given People's Instruction No. 14, IPI—Criminal 26.01 (1968), which in pertinent part stated:

"Your agreement upon a verdict must be unanimous. Your verdict must be in writing and signed by all of you, including your foreman or forelady.

* * *

You will be provided with two (2) forms of verdict. When you have unanimously agreed upon your verdict, you will select the form which reflects your verdict and sign it as I have stated."

Defendant contends that this instruction by itself was misleading and gave the impression that the jury had a duty to decide the case and should not have to be discharged for being unable to agree.

In support of his tendered instruction, defendant also cites, American Bar Association Project on Minimum Standards, Standards Relating to Trial by Jury 145-46 (1968). Section 5.4 of those standards states that before a jury retires to deliberate, the court may give them an instruction which states in part:

"(i) that in order to return a verdict, each juror must agree thereto;

(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

(iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

(iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

(v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict."

The instruction recommended by the Standards has the elements of defendant's proposed instruction. It also has balancing provisions telling the jurors to deliberate with fellow jurors, reexamining their views and changing their minds if they are convinced their views are wrong. No such instruction appears in Criminal IPI. In *People v. Prim*, 53 Ill.2d 62, 289 N.E.2d 601, the Supreme Court ordered that an instruction conforming to section 5.4 of the Standards be given in a case where, after lengthy deliberation, the jury reports that it is unable to reach a verdict. The opinion gave no indication that the instruction should be given prior to the beginning of jury deliberations.

■■ The jury was given IPI Criminal Instruction No. 2.03 (1968) which fully explained to them the defendant's presumption of innocence and the State's burden to prove him guilty beyond a reasonable doubt. Defendant's tendered instruction was properly refused.

The judgments convicting defendant and imposing sentence are affirmed.

Affirmed.

TRAPP, P. J., and CRAVEN, J., concur.