THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT JONES, Defendant-Appellant.

First District (1st Division)    No. 79-394

Opinion filed May 27, 1980.

James J. Doherty, Public Defender, of Chicago (Daniel F. Nolan and Mary T. Woodward, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Joan S. Cherry, and William J. Frost, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

After a jury trial, Robert Jones was convicted of the murders of Samuel and Campbell Thompson. Defendant was sentenced to a term of 100 to 300 years in the Illinois Department of Corrections. Defendant appeals.

On appeal defendant argues (1) that the trial court erred in admitting hearsay testimony; (2) that defendant was not proved guilty beyond a reasonable doubt; and (3) that the trial court erred in refusing to include the second paragraph of Illinois Pattern Instructions, Criminal, No. 3.02 (1968)(hereinafter IPI) in its instructions to the jury.

We affirm.

On June 17, 1977, the bodies of Samuel and Campbell Thompson were found in the front seat of a car which was parked in a vacant lot. Both men died from gunshot wounds to the head.

Among the witnesses called by the State were Nancy Thompson, Albert Thompson, Clifford Lindsey, Brenda Clay and Juanita Simpson. Nancy Thompson, the wife of Samuel Thompson, testified that on June 15, 1977, she withdrew $420 from her credit union and gave it to Samuel. Over defendant's objection she stated that Samuel told her that he was meeting a man from whom he was going to purchase a 1977 Lincoln Continental for $1,000. He left home alone and returned later that day without the money. On June 16, 1977, Samuel drove his wife to the train and told her that he was going to pick up the car, but did not state where or with whom he was going. Mrs. Thompson did not see her husband again that day.

Albert Thompson testified that during June 1977, he lived with his mother, two sisters, and brother Campbell Thompson. Albert testified over defendant's objection that on June 15, 1977, Campbell told him that he and Samuel Thompson were purchasing an automobile from Robert Jones for $1500 and that they were getting the car the following day. Albert stated that he had been introduced to defendant by his brother Calvin and that defendant had been at Albert's home with Campbell Thompson.

Clifford Lindsey, a step-brother of Campbell and Samuel Thompson, testified over defendant's objection that on June 16, 1977, Samuel told him that he intended to buy a car from Robert Jones later that day. Samuel wanted Lindsey to accompany him and drive the car back, but Samuel never arrived at Lindsey's house. Lindsey had previously been introduced to defendant by Campbell Thompson.

Brenda Clay testified that she had known defendant for approximately 20 years and that in June 1977 she lived in the same apartment building as defendant. Clay saw Samuel and Campbell Thompson with defendant in the basement of the building on June 15th or 16th. She read about the deaths of Samuel and Campbell Thompson on June 18, 1977. Clay further testified that approximately 2 or 3 days before she read about the Thompsons' deaths, defendant came to her apartment and gave her a black knit hat. Defendant told Clay that the hat contained a gun and asked Clay to keep the gun for him. Although Clay did not look inside the hat, she testified that it contained a heavy object and that she put the hat and gun in a drawer. After receiving the hat, Clay also received two black briefcases from defendant.

After learning that the police had been to defendant's apartment on July 12, Clay placed the hat under some wood beneath the back stairs to

her apartment. On July 13, 1977, Investigator Laskey arrived at Clay's house with a search warrant for the gun and briefcases. Clay showed the investigator where she had placed the gun.

Juanita Simpson testified that she lived with defendant in June 1977. She stated that she had met Samuel and Campbell Thompson in the summer of 1977 and that they were both at the apartment on June 16, 1977. Simpson never saw the Thompsons alive after this day.

Various police officers and investigators testified to the recovery of the gun from under the stairs and to the chain of custody of the weapon and the bullets which were removed from the Thompsons. After test firing the weapon, Sergeant Smith determined that the bullets recovered from the Thompsons could only have been fired from the .38-caliber revolver found under Clay's back stairs.

Defendant first argues that the testimony of Nancy Thompson, Albert Thompson, and Clifford Lindsey regarding their conversations with Samuel and Campbell Thompson is hearsay and was improperly admitted because they did not fall within a recognized exception to the hearsay rule.

■■ Hearsay has been defined as " 'testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of the matters asserted therein * * *.' " (*People v. Carpenter* (1963), 28 Ill. 2d 116, 121, 190 N.E.2d 738, 741.) While we agree with defendant's contention that the witnesses' statements are hearsay, we note that similar testimony has been held to be admissible under a "declaration of intent or mental state" exception to the hearsay rule. *People v. Fletcher* (1978), 59 Ill. App. 3d 310, 375 N.E.2d 1333; *People v. Johnson* (1976), 42 Ill. App. 3d 425, 355 N.E.2d 699; *People v. Reddock* (1973), 13 Ill. App. 3d 296, 300 N.E.2d 31.

Defendant argues that *People v. Cole* (1975), 29 Ill. App. 3d 369, 329 N.E.2d 880, is applicable to the issue of the admissibility of the testimony in this case. In *Cole,* the court held that it was improper to admit the testimony of a witness regarding statements made to him by a murder victim that he intended to go to defendant's home. The court stated that there was "no basis for establishing in a criminal case 'the declaration of mental state' or 'a statement of intention' as an exception to the hearsay rule in derogation of the defendant's rights of confrontation and cross-examination as assured by the constitution." 29 Ill. App. 3d 369, 374, 329 N.E.2d 880, 885.

However, we do not agree that a defendant is denied his cross-examination and confrontation rights merely because hearsay testimony is admitted. In *United States v. Cerone* (7th Cir. 1971), 452 F.2d 274, *cert. denied* (1972), 405 U.S. 964, 31 L. Ed. 2d 240, 92 S. Ct. 1168, the court stated:

"[I]n the plurality opinion of Mr. Justice Stewart in *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), it is stated: 'It seems apparent that the Sixth Amendment's Confrontation Clause and the evidentiary hearsay rule [of exclusion] stem from the same roots. But this Court has never equated the two, and we decline to do so now.' 400 U.S. at 86, 91 S.Ct. at 218.

&ast; &ast; &ast;

[T]he sixth amendment's confrontation clause applies to the states through the fourteenth amendment with no less vigor than is true of its application to federal prosecutions. *See Pointer v. Texas*, 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The refusal to equate the sixth amendment with the hearsay rule thus applies equally to federal and state prosecutions." (452 F.2d 274, 283.)

We therefore question the rationale and holding in *Cole*, and find that, in the case at bar, the testimony of the three witnesses was properly admitted to show the decedents' intent to meet with the defendant.

Secondly, defendant contends that he was not proved guilty beyond a reasonable doubt. In support of this contention, he states that the lack of eyewitnesses and the failure of the State to produce other evidence placing him at the scene of the crime did not exclude the possibility that another person was responsible for the murders.

In *People v. Marino* (1970), 44 Ill. 2d 562, 580, 256 N.E.2d 770, 780, our supreme court, enunciating the standard for determining whether a defendant had been proved guilty beyond a reasonable doubt where the evidence offered against him is all or largely circumstantial, stated:

"[I]t is well settled that the commission of an offense may be established entirely by circumstantial evidence. As we observed in *People v. Bernette*, 30 Ill.2d 359, 367, 'a conviction may be sustained upon circumstantial evidence as well as direct evidence, (*People v. Russell*, 17 Ill.2d 328,) it being necessary only that the proof of circumstances must be of a conclusive nature and tendency leading, on the whole, to a satisfactory conclusion and producing a reasonable and moral certainty that the accused and no one else committed the crime. (*People v. Magnafichi*, 9 Ill.2d 169; *People v. Grizzel*, 328 Ill. 11.) The jury need not be satisfied beyond a reasonable doubt as to each link in the chain of circumstances relied upon to establish guilt, but it is sufficient if all the evidence, taken together, satisfies the jury beyond a reasonable doubt of the accused's guilt.' "

Moreover, in many homicide cases, there are no eyewitnesses, yet this does not mean that the guilt of a defendant may not be proved by facts

and circumstances which indicate beyond a reasonable doubt that he is the perpetrator of the crime. *People v. Merkel* (1974), 23 Ill. App. 3d 298, 319 N.E.2d 77.

We find that sufficient evidence was presented from which the jury could conclude that defendant was guilty beyond a reasonable doubt of the murders of Samuel and Campbell Thompson. The testimony of -Nancy Thompson, Albert Thompson, Clifford Lindsey, Brenda Clay, and Juanita Simpson placed defendant with the Thompsons on the day of their deaths. Moreover, there was clear and convincing evidence linking defendant to the murder weapon.

Lastly, defendant argues that the trial court erred in refusing to include the second paragraph of IPI Criminal No. 3.02 in its instructions to the jury. The paragraph provides, "You should not find the defendant guilty unless the facts and circumstances proved exclude every reasonable theory of innocence."

The Committee Notes to this instruction are couched in terms limiting the times when it is permissible to give the second paragraph, and courts of review are therefore reluctant to rule that the failure to give the second part of IPI Criminal No. 3.02 is reversible error. (*People v. Hammers* (1976), 35 Ill. App. 3d 498, 341 N.E.2d 471, *cert. denied* (1976), 429 U.S. 1002, 50 L. Ed. 2d 614, 97 S. Ct. 534.) Reversible error occurs only if it appears that justice has been denied or that the verdict resulted from such error. *People v. Cox* (1979), 71 Ill. App. 3d 850, 389 N.E.2d 1238, citing *People v. Hammers* and *People v. Merkel* (1974), 23 Ill. App. 3d 298, 319 N.E.2d 77.

While the State's case consisted primarily of circumstantial evidence, the testimony concerning the gun constituted direct evidence and the trial court's refusal of the second paragraph of IPI Criminal No. 3.02 was therefore not error. Even if the refusal was error no reversible error occurred because it does not appear that justice was denied or that the verdict resulted from the refusal to give the second paragraph of the instruction.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

O'CONNOR and CAMPBELL, JJ., concur.