THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JEFFREY BOOSE, Defendant-Appellant.

First District (4th Division)　No. 76-608

Opinion filed October 19, 1978.

Francis E. Andrew, of Chicago (Lawrence J. Suffredin, Jr., of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Pamela L. Gray, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

At the conclusion of a jury trial in the circuit court of Cook County, defendant, Jeffrey Boose, was found guilty of armed robbery (Ill. Rev. Stat. 1977, ch. 38, par. 18—2) and was sentenced to a term of 4 to 12 years imprisonment. On appeal, defendant contends the trial court erred in its instructions to the jury on the legal concepts of accountability and circumstantial evidence.

We affirm the trial court.

On December 10, 1973, at approximately 4:25 p.m., two men entered the Allstate Insurance Company sales office, at 9133 Stony Island Avenue, Chicago, Illinois. Therese Davis, an employee of Allstate, testified that she approached the taller of the two men and asked, "Sir, can I help you?" When the taller man responded, "Where do you make your payments?" Ms. Davis directed him and his companion to the desk of her co-worker, Roseanne Monocchio.

As the two men made their way toward Ms. Monocchio's desk, Ms. Davis turned away, returned to her own desk, and resumed a telephone conversation with an insurance agent whom she had placed on "hold." Upon concluding the telephone conversation, Ms. Davis looked up and saw Ms. Monocchio trying to mouth to her, "It was a robbery."

Ms. Davis yelled, "robbery"; ran toward Ms. Monocchio and at that point, she saw three men run out of the entry and exit door of the office. It was later learned that the third man Ms. Davis saw run from the building was Chicago Police Officer Clifford Doyle.

On May 1, 1974, Ms. Davis viewed a lineup and at that time positively identified the defendant, Jeffrey Boose, as the man she had spoken to in the Allstate sales office immediately before the robbery. However, at trial, Ms. Davis could not identify the defendant as either the man she had seen in the Allstate office or as the man she had picked from the May 1974 lineup. Ms. Davis did testify that at the time of the lineup, she was certain the man she identified was the same man she talked to in the Allstate office immediately before the robbery.

Roseanne Monocchio testified that on December 10, 1973, she was employed by Allstate in its Stony Island Avenue sales office. Ms. Monocchio stated that on that day at approximately 4:25 p.m., she was working at her desk when a brown paper bag was thrown in front of her. As she looked up, she saw two men standing near her. One of the men held a revolver which he "sort of [hid] behind" Ms. Monocchio's double-stacked in-out box. He demanded that Ms. Monocchio give them "the

money." Ms. Monocchio asserted that as she removed $266 from her desk drawer the money was snatched from her hand. The two men then rushed out of the office.

During the incident, Ms. Monocchio was looking primarily at the revolver and the face of the man holding it. She testified that she had only a "glimpse" of the second man involved in the robbery and could not identify him. She further said that the defendant was not the man who had held the gun during the robbery.

Chicago Police Officer Clifford Doyle testified that in the late afternoon of December 10, 1973, he was sitting in the reception room of the Allstate Insurance Company building, at 9133 Stony Island Avenue, waiting to make a personal claim. Officer Doyle explained that he was off duty at the time and was dressed in civilian clothes.

The reception room, in which Officer Doyle was sitting, was separated from the company's sales office by a full glass door. At approximately 4:25 p.m., Officer Doyle asserted that he saw the defendant, Jeffrey Boose, enter the sales office with another man, shorter in height, at his side. Officer Doyle testified that he had seen the defendant in the surrounding neighborhood several times prior to December 10 and knew the defendant as "Jeffrey."

A few minutes after the defendant and the shorter man entered the building, Officer Doyle heard the "rustle of feet." When he looked up, Officer Doyle saw the defendant and the shorter man "trotting" out of the sales office at a very hurried rate. At about the same time, Officer Doyle heard Therese Davis yell, "robbery."

Officer Doyle ran out of the building and chased the two men northbound on Stony Island Avenue. As the two men reached the corner of 91st Place, Officer Doyle shouted that he was a police officer and ordered them to stop. The two men did not respond but turned the corner and ran east on 91st Place until they reached a white Pontiac automobile. A third man was already sitting in the driver's seat of the automobile and had the engine running.

As the defendant entered the automobile, the shorter man turned and fired at Officer Doyle. Officer Doyle dove to the ground and returned two shots both of which missed. After firing a second shot at Officer Doyle, the shorter man jumped into the back seat of the Pontiac and the automobile sped off.

While patrolling his beat in a marked squad car on May 1, 1974, Officer Doyle spotted the defendant driving southbound on Stony Island Avenue near 88th Street. The officer stopped the automobile and arrested the defendant.

Officer Doyle testified further that the defendant's physical appearance,

on May 1, 1974, the day of the lineup, was similar to his physical appearance when the officer had last seen him on December 10, 1973 in the Allstate sales office. Officer Doyle added that, at the time of trial, the defendant was approximately 20 to 30 pounds slimmer, had longer hair and "a greater growth of whiskers on his chin."

Following the close of the State's case, the defense called as a witness, Terry Alan Stratton. Stratton testified that on December 10, 1973, at approximately 4:30 p.m., he was seated in his car parked on 91st Place facing east. Stratton stated that he was waiting for his father and girlfriend both of whom worked around the corner on Stony Island Avenue at the Allstate sales office.

In his rear view mirror, Stratton saw three men dash around the corner and run east on 91st Place in the direction of his car. Stratton asserted that these three men ran a couple of hundred feet past his car to a white Pontiac in which a fourth man was already sitting. After the three men entered the Pontiac, it sped off.

Stratton stated that, about this same time, another man came running around the corner and stopped in the street near the driver's side of his car. The man, later identified as Officer Doyle, fired a shot at the white Pontiac. Stratton dove to the floor of his car and heard approximately three more shots being fired. Stratton testified that he did not see the faces of the three men well enough to identify them.

Louis P. Dodd testified that he was an Allstate insurance agent who had written insurance policies for the defendant's family. Dodd stated that the Allstate office closest to the defendant's home was as 9133 Stony Island Avenue and that payments could be made at that office.

The defendant took the stand and testified in his own behalf. The defendant stated that he did not know where he was on December 10, 1973, although he knew he never set foot in the Allstate sales office on Stony Island Avenue on that date. He denied helping anyone rob the Allstate office. The defendant testified further that he knew Officer Doyle and had been arrested by him many times.

Following the presentation of all the evidence and after having heard closing arguments, the jury deliberated and found the defendant guilty of armed robbery. The trial court sentenced the defendant to a term of 4 to 12 years imprisonment. This appeal followed.

OPINION

I

Initially, defendant contends the trial court erred in rejecting his tendered jury instruction on accountability. We disagree.

Illinois Pattern Jury Instruction, Criminal, No. 5.03 (hereinafter IPI),

which covers the concept of accountability, was tendered by the prosecution and given to the jurors by the trial court. IPI Criminal No. 5.03 states in its entirety:

> "A person is responsible for the conduct of another person when, either before or during the commission of a crime, and with the intent to promote or facilitate the commission of a crime, he knowingly solicits, aids, abets, agrees or attempts to aid the other person in the planning or commission of the crime."

Defendant does not challenge the accuracy of this instruction. Rather, he contends the trial court erred in refusing to give *his* instruction on accountability, which added the following paragraph to IPI Criminal No. 5.03:

> "A person is not responsible for the conduct of another if he is only associated with the other or merely present at the commission of a crime. Even consent to, or knowledge of, another's commission of a crime does not make the consenting or knowing person responsible for the crime of the other."

This rather ambiguous paragraph added nothing of substance to the standard IPI accountability instruction. IPI Criminal No. 5.03 accurately defines the concept of accountability in a positive and clear fashion. The additional paragraph proffered by the defendant merely attempts to reiterate this same definition, albeit in a negative fashion.

Even if we assume defendant's instruction accurately stated the law and was not calculated to mislead or confuse the jury, we must still conclude that the trial court did not err in rejecting it. As the appellate court stated in *People v. Hughes* (1977), 46 Ill. App. 3d 490, 500, 360 N.E.2d 1363, 1369-70:

> "It is well established that it is not error to refuse a requested instruction that accurately states a principle of law applicable to a case, if that principle has already been covered accurately and sufficiently by another instruction. [Citation.]"

■■ The accountability instruction, tendered by the prosecution and given to the jurors by the trial court, stated the applicable law clearly, concisely and impartially; moreover, it was the pertinent Illinois Pattern Jury Instruction which was required to be given under Supreme Court Rule 451 (Ill. Rev. Stat. 1977, ch. 110A, par. 451(a)). Consequently, the instruction tendered by the defendant was properly refused by the trial court as repetitious. *People v. Hughes* (1977), 46 Ill. App. 3d 490, 360 N.E.2d 1363.

## II

The defendant next contends the trial court committed reversible error in rejecting his proffered jury instruction on the concept of circumstantial evidence.

The prosecution tendered and the trial court gave to the jurors the first paragraph of IPI Criminal No. 3.02:

"Circumstantial evidence is the proof of facts or circumstances which give rise to a reasonable inference of other facts which tend to show the guilt or innocence of the defendant. Circumstantial evidence should be considered by you together with all the other evidence in the case in arriving at your verdict."

The trial court rejected the defendant's tendered instruction which contained *both* paragraphs of IPI Criminal No. 3.02. The second paragraph provides:

"You should not find the defendant guilty unless the facts and circumstances proved exclude every reasonable theory of innocence."

The committee comments to the Pattern Jury Instructions state that the second paragraph of IPI Criminal No. 3.02 "should be given *only* when the proof of guilt is *entirely* circumstantial." The committee note is couched in terms limiting the times when it is *permissible* to give the second paragraph and not in terms of stating the times when that paragraph *must* be given. *People v. Hammers* (1976), 35 Ill. App. 3d 498, 341 N.E.2d 471.

The defendant argues that the evidence of his guilt is entirely circumstantial and that the trial court's refusal to give the second paragraph of IPI Criminal No. 3.02 constitutes reversible error. We disagree.

Generalized statements aside, it is often-times difficult to draw a dichotomy between direct and circumstantial evidence. (See *People v. Minish* (1974), 19 Ill. App. 3d 603, 608-16, 312 N.E.2d 49, 53-58 (Stouder, J., dissenting).) There is authority which demonstrates that the evidence presented here is *not entirely* circumstantial (*People v. Minish* (1974), 19 Ill. App. 3d 603, 312 N.E.2d 49; *People v. Christiansen* (1969), 118 Ill. App. 2d 51, 254 N.E.2d 156) and that the second paragraph of IPI Criminal No. 3.02 is not, therefore, applicable.

■■ In any event, upon a review of all the evidence and in light of the defendant's theory of defense that he was not present at the time of the robbery, we find that the trial court's refusal to give to the jurors the second paragraph of IPI 3.02, even if it was error, was not prejudicial. *People v. Hunter* (1978), 61 Ill. App. 3d 588, 376 N.E.2d 1065; *People v. French* (1978), 59 Ill. App. 3d 353, 375 N.E.2d 502; *People v. Hammers* (1976), 35 Ill. App. 3d 498, 341 N.E.2d 471; *People v. Merkel* (1974), 23 Ill. App. 3d 298, 319 N.E.2d 77.

Accordingly, for the reasons stated, we affirm the conviction of the defendant.

Affirmed.

JOHNSON, P. J., and ROMITI, J., concur.