THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RAUL MALDONADO, Defendant-Appellant.

Third District   No. 79-406

Opinion filed January 29, 1980.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Keefe, State's Attorney, of Rock Island (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Having entered a guilty plea to the charge of murder, the defendant, Raul Maldonado, was sentenced to a determinate term of imprisonment of 36 years. In this appeal the defendant challenges only the propriety of the sentence imposed.

As a factual basis for the guilty plea, it was determined that on October 26, 1978, the defendant was working on a section gang for the Burlington Railroad in Barstow, Illinois. At that time Maldonado's foreman, Mr. Dennis L. Bittner, came over to the defendant and told him he was working too slow and needed to step up his work. A heated argument ensued, witnessed by several other employees, and the defendant jumped up and grabbed Mr. Bittner and indicated he was going to kill him. The two men then began walking away from the gang, and Bittner advised the defendant he was fired. The defendant then walked approximately a half mile down the track to where his car was parked and drove back to within one-quarter mile of the section gang's location. The defendant was visibly upset, had words with Rudy Almaguer, the road master, and ultimately dislodged communication wires from Almaguer's truck radio. Upon returning to the area of the section gang the defendant went directly to Bittner, and, when he was approximately five to 10 feet away, engaged Bittner in another argument finally asking, "Is this the way you want it?" Shortly thereafter defendant pulled a gun from his stomach area and fired at Bittner as the latter was trying to get away. The bullet lodged in the back of Bittner's head causing his death. The shooting was witnessed by a number of other employees present on the scene. A struggle followed in which Almaguer tried to subdue the defendant. During the struggle another shot was fired, but no one was hurt. Several other men then assisted in an attempt to get the pistol away from the defendant. During this time the defendant was heard to say "I won't be happy until he [Bittner] ends up in the cemetary." In addition the defendant stated, "I wanted to get two or three other guys out here on the track."

Police subsequently arrived, and after being advised of his rights, the defendant made an admission to Trooper Darrell Bounds that he had, in fact, shot Larry Bittner. Another statement by defendant was later tape-recorded by Investigator Dick Fisher wherein defendant again admitted shooting Mr. Bittner. When the defendant was taken into custody and searched he was found to have 30 live rounds of pistol ammunition for the .32-calibre pistol he had had in his possession. Subsequent to the defendant's guilty plea, a hearing in aggravation and mitigation was held. Initially the defense counsel made a motion to strike certain portions of the presentence report for a variety of reasons. Portions of the report

were specifically not considered by the trial court, while other portions the court found to be relevant and were accordingly given weight.

Over a defense objection the trial court considered a portion of a presentence report which indicated that Edward Loftus, the victim of an earlier robbery in which the defendant had been involved, had never fully recovered from a beating he sustained during the offense. Defense counsel's objection was to the effect that insufficient information was available for the defense to rebut the association between the robbery and the defendant or even to determine if it was true, since this portion of the report was merely a conclusion of the drafter of the report based on a quote from Clara Kimmel, a deputy sheriff of Whiteside County. Counsel concluded his objection by noting the extreme prejudice of the statement, asking that it be stricken and alternatively requesting the right of subpoenaing some of the records and people involved.

According to the presentence report, on February 20, 1961, defendant was charged with robbery. The charging instrument alleged that defendant violently assaulted one Edward Loftus, in an attempted escape from jail, and by force took a set of jail keys from him. It was learned through Deputy Clara Kimmel that Loftus never recovered from the beating he received from the defendant during the attempted escape. However, the defendant was tried and convicted only of robbery.

In response to the defendant's objection, the trial court stated:

"Now, as for Mrs. Kimmell's statement to the investigator I think that Mr. Chickris [defense counsel] should be given some time to look into that a little bit and I don't know what Mr. Teros might not want to also because I am interested in just what this alleged beating was of Edward Loftus and apparently Edward Loftus is now dead and if related to that, I think it is relevant considering what I have heard about the defendant's personality traits.

So, I would suggest this. That we go ahead with what we can today. Now, maybe that isn't possible, but, it may be difficult. I don't know. Or, maybe some phone calls would cover it. I don't know. But, I think we are down to this, if Mr. Chickris needs some time on this Whiteside County situation, I think he's entitled to it because I will frankly say that that is going to have a bearing on the sentence and if phone calls will do it, in an hour, if I could give you an hour, and see how that works out, that's fine with me, because we have reserved two hours for this sentencing.

If that doesn't work, I will give you more time because I know it will have a bearing and that's why I think I should do it that way."

Following a recess the State informed the court that Mrs. Kimmel had been contacted at the Whiteside County sheriff's department and related

that there had been a jailbreak and robbery at Whiteside County jail and that Mr. Loftus was in fact beaten by the defendant and two other prisoners. She further indicated in the telephone conversation that Loftus never fully recovered, in that, after he was released from the hospital he was unable to perform his functions at the jail and was accordingly discharged. The defense counsel stipulated to the substance of the conversation with Mrs. Kimmel, but stood on his prior objections regarding its admissibility. The court later specifically considered this as one of the factors in aggravation.

The defense counsel also objected to a summary of a 1961 report from the Pontiac Correctional Center which stated:

"On March 30, 1961 he [the defendant] was transferred to the Pontiac Correctional Center (No. 24691). He had an extensive punishment record while at this institution. He was reprimanded for the following actions: fighting, contraband, yelling in isolation, fire in a cell and sexual activities with inmates. On October 2, 1963 he was warned that his good time would be taken away."

It was argued that there was no way to rebut the charges and no way to find out what the substance of those charges were. The points made in the report were not the result of convictions by a court but merely records of the institution. The court, however, found the material relevant and specifically considered it when imposing the sentence.

Another of the defendant's objections concerned the inclusion in the presentence report of unverified traffic offenses. In referring to that paragraph of the presentence report which included numerous unverified traffic convictions, the trial court pointed out that the date and location were unknown, as was the disposition. Other traffic convictions were, however, verified, and the trial court specifically referred to traffic convictions when imposing the sentence.

The defendant's final unsustained objection to the presentence report was regarding a 1967 sociological report prepared by Eugene S. Buldak. It was defendant's position that the report was too old to be of any real value and that its prejudicial value far outweighed any probative value.

Thereafter, the defendant presented two witnesses, including Dr. Eric Ritterhoff, a psychiatrist. Dr. Ritterhoff testified concerning his psychological evaluation of the defendant whom he examined for the purpose of formulating a presentence evaluation.

■■ Of course, in an appeal of this nature, there is a rebuttable presumption that the sentence imposed by the trial court is proper. (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—4.1.) However, that presumption may be rebutted by an affirmative showing of some impropriety in the imposition of the sentence. *People v. Choate* (1979), 71 Ill. App. 3d 267, 389 N.E.2d 670.

The majority of the defendant's challenges to those items in the presentence report which were considered by the trial court in imposing the sentence concern the impropriety of considering prior criminal activity of the defendant which has not resulted in a conviction. Within this category are three items: (1) The unverified traffic convictions; (2) the reference to the defendant's correctional record; and, (3) Mrs. Kimmel's statement concerning the beating of Edward Loftus.

Addressing the matter of the unverified traffic convictions first, a review of the record clearly establishes that the trial court did not consider the unverified traffic convictions. Instead, the trial judge referred to those that were verified, after recognizing that the unverified convictions could be given no weight.

■■ As for the institutional record of the defendant, the defendant's conduct in jail is certainly an appropriate matter for consideration when determining his rehabilitative potential. (*People v. Mitchell* (1976), 37 Ill. App. 3d 372, 346 N.E.2d 63.) After a consideration of this factor, and others, the court concluded that the defendant "probably cannot ever be rehabilitated \* \* \*." It cannot, therefore, be said that the trial court improperly considered this information.

■■ However, the statement by Mrs. Kimmel is quite different. This court has recently stated:

"\* \* \* as a general rule bare arrests not resulting in convictions are not admissible at a sentencing hearing. However, the State may admit testimony concerning conduct which may be characterized as criminal and which is unrelated to the facts underlying defendant's conviction. Evidence of propensity to commit criminal offenses as shown by prior convictions is appropriate and relevant evidence in determining the sentence to be imposed. However, it is inappropriate to show such propensity by charge or allegations in the absence of a resulting conviction. To hold otherwise would mean a person would be treated as having been convicted of an offense and sentenced therefore without regard to the rights of due process accorded to those charged with criminal offenses. If evidence is appropriate and relevant for some purpose other than to show a propensity for criminal offenses, such evidence can be considered as relevant to the sentence even though it might be said to indicate a criminal offense. As applied to the instant case where defendant has denied any other criminal conduct, it would appear the sentencing hearing is a particularly inappropriate forum in which to determine guilt or innocence." (*People v. Williamson* (1979), 69 Ill. App. 3d 1037, 1040-41, 388 N.E.2d 240, 243.)

As a result of his jailbreak attempt, the defendant was tried for and convicted of only robbery. Certainly, the brutal manner in which the robbery was carried out would have some relevance to ascertaining the defendant's character and rehabilitative potential. However, no causal connection has ever been established between the defendant's act of beating Mr. Loftus and the alleged facts that he never recovered, was subsequently unable to perform his duties, and was accordingly discharged. For the trial judge to consider the alleged fact that Loftus never recovered was, therefore, improper. See *People v. Gant* (1974), 18 Ill. App. 3d 61, 309 N.E.2d 265.

Lastly, the defendant asks us to declare improper the consideration of the 1967 sociological report simply because it was "too old." This we decline to do. The development of a defendant's personality over a period of time, indeed throughout his or her lifetime, is quite relevant to the rehabilitative potential of that defendant.

A person's life is not segmented into three, or five, or 10-year periods in each of which he starts afresh. And it is only a matter of common sense that positive changes in the defendant's personality over a period of years is relevant to a determination of the sentence to be imposed, as are negative changes and a lack of change. Since development is significant to the determination of the sentence to be imposed, whether a report concerning a defendant's personality should be considered is a matter within the discretion of the trial judge, as is the weight to be given the contents of such a report.

In the case at bar, the sentencing judge, when imposing the sentence, now challenged, made no reference to the sociological report of Mr. Buldak. Since the trial judge did not rely to too great an extent on an older evaluation, and did not disregard the more recent evaluations, it can not be said that the trial court abused its discretion by refusing to strike the 1967 report from the presentence report.

Accordingly, the judgment of the Circuit Court of Rock Island County is affirmed in all respects except the sentence is vacated and the cause is remanded for a new sentencing hearing which is to be conducted in such a manner as not to be inconsistent with this opinion.

Affirmed in part, sentence vacated and remanded.

STOUDER, P. J., and STENGEL, J., concur.