THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
THOMAS CROSS *et al.*, Defendants-Appellants.

Third District    Nos. 79-451, 79-450 cons.

Opinion filed September 18, 1981.

Robert Agostinelli and Stephen Omolecki, both of State Appellate Defender's Office, of Ottawa, for appellants.

Bruce W. Black, State's Attorney, of Pekin (Donald L. Hays and Kenneth R. Boyle, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE TRAPP delivered the opinion of the court:

Defendants appeal judgments of conviction of arson (Ill. Rev. Stat. 1979, ch. 38, par. 20—1(a)) entered upon jury verdicts and the sentences imposed. Upon denial of post-trial motions, Cross was sentenced to 7 years and Hunt was sentenced to 3 years and 6 months in prison. Defendants urge numerous claims of error.

A tavern owned by Peggy Artman was set afire at approximately 3 a.m. on August 11, 1978. A son of the owner, who was doing inside cleaning, heard the sound of an explosion and discovered the fire. The owner went to the tavern when advised of the fire, and there she indicated to the police the names of several possible suspects, including the defendants. The defendants had spent several hours at the tavern on

the evening of August 10, and were leaving as the owner returned shortly before midnight. Following the fire, a dented five-gallon can without a cap for the spout was found on the roof of the tavern at the area of the fire.

An essential part of the case for the prosecution is the identification of the defendants as the purchasers of a quantity of gasoline which was placed in a five-gallon can. The can was described as battered or dented and without a cap for the spout.

The identification of the defendants was made by a witness, Liggons, who was the night attendant at an Owens gasoline station in the neighborhood. The record shows that this station was one of two stations in the community which were open all night, and the only one that had sold gasoline placed in a container on that night shift.

Liggons testified that at about 1:30 a.m. on August 11, gasoline was purchased for an older model automobile driven by a woman accompanied by two men. Defendants admit being the male occupants of that automobile. Although defendants testified concerning the event without stating a specific time, the context of their testimony suggests that the purchase was made shortly after leaving the Artman tavern.

Liggons testified that the same two men and woman returned to the station at about 3 a.m. and purchased gasoline which was placed in a metal can. Since the spout had no cap, he stuffed it with paper towels and the can was placed in the car. Liggons identified the gasoline can introduced into evidence as being the same can, or very like the can he had filled for the two men. The witness agreed that the appearance of the can was changed by smoke and scorching, but he believed that it had the same dented appearance as the can that he filled. The defendants deny returning to the station to purchase gasoline on this last occasion, and each presented alibi testimony.

Liggons identified the defendants as the two men who purchased the gasoline for both the automobile and for transporting in the can under the following circumstances: Bassett, a policeman, reported to the police station when called concerning the fire. By reason of information given to him, he prepared a panel of six photographs of individuals, including each of the defendants. He then went to the Owens station and showed the panel of six photographs to Liggons. The latter identified the defendants from the photographs in the panel, and at the trial made an in-court positive identification of the defendants as the men who purchased the gasoline both for the automobile and the can.

A truck driver, Wesselmann, testified that he was repairing his truck at approximately 3 a.m. at a place 200 feet east of the tavern. He observed a light-colored older model car drive up and stop, and two men left the automobile. The driver, who appeared to be a woman, then drove away.

The two men, carrying a large can, proceeded to the back of a building and later he saw a puff of smoke from the roof of the tavern. He did not see any fire. He advised the police of his observations after he learned of the fire.

A police officer, Salmon, testified that shortly after 3 a.m. he received radio information concerning the fire and thereupon searched for an older model car of a light color. At a point approximately five blocks from the tavern he stopped an automobile which appeared to match the description. The defendant Cross was present in the car as was his companion, Candice Karnes. The occupants identified themselves to the officer as requested and granted permission to search the car and the trunk. Although he specifically sought the smell of gasoline, he detected no such odor. He then released the car and occupants.

It is first contended that the defendants were not proved guilty beyond a reasonable doubt. The argument is bottomed upon the hypothesis that the evidence was entirely circumstantial, that there were gaps and weaknesses in the prosecution witness, and that credible alibi evidence was presented.

The argument that the witness, Liggons, failed to describe certain tattoos, the clothing of the defendants, and was confused as to the color of the automobile is essentially irrelevant for the reason that the presence of the defendants at the filling station to purchase gasoline for the Karnes' automobile was admitted. There is testimony descriptive of the five-gallon can being used as a container for gasoline purchased from Liggons, and that can is identified as being the one found at the scene of the fire. A witness near the scene identified an automobile substantially matching that used by defendants and Karnes. Two men who left the car were observed carrying a large can near the tavern while a driver, believed to be a woman, drove away. Defendant, Cross, and Karnes were observed to be in the automobile a short distance from the fire shortly after the fire was discovered.

A conviction may rest upon circumstantial evidence and the inferences drawn therefrom. (*People v. Fletcher* (1978), 72 Ill. 2d 66, 377 N.E.2d 809.) Indeed, the crime of arson is by its very nature secretive and usually incapable of direct proof. (*People v. Smith* (1976), 44 Ill. App. 3d 237, 357 N.E.2d 1320.) A conviction based on circumstantial evidence may be sustained so long as the proof is of a conclusive nature and tendency leading, on the whole, to a satisfactory conclusion of guilt and producing a reasonable and moral certainty that the accused and no one else committed the offense. (*Fletcher.*) The triers of fact are not required to search out possible explanations compatible with innocence and elevate them to the status of reasonable doubt. *People v. Huff* (1963), 29 Ill. 2d 315, 194 N.E.2d 230.

While the evidence outlined was circumstantial, it was nevertheless proper evidence from which the trier of fact could determine defendants' guilt. In addition to the facts in evidence here summarized, the jury had the opportunity to observe and hear the witnesses as an aid in reaching their verdict.

■█ Defendants argue that the trial court committed reversible error by permitting the panel of photographs from which Liggons identified defendants to be sent to the jury room. Defendants made no objection to admitting the photographs into evidence, but now claim that there was error since such photographs were obviously "mug shots" which suggested prior criminal conduct or police contact. The record discloses that defendants' trial tactics made the claim of prejudice untenable. There was no objection made to the testimony of the officer, Bassett, concerning the preparation of the panel of photographs to include defendants. Counsel cross-examined Bassett concerning the preparation of the photographic panel and inquired of both Bassett and Liggons whether or not Bassett had taken Liggons to the police station to view other "mug shots," and, as to Bassett, inquired why he had not taken Liggons to the police station for such purpose. In the light of such emphasis by counsel, the view of the photographs by the jury would hardly constitute a source of revelation to the jury that defendants had prior police association.

■█ █ Whether the exhibit may be taken to the jury room is a matter within the discretion of the trial court, and its decision will not be reversed on appeal in the absence of a showing of an abuse of judicial discretion which prejudices the defendants. (*People v. Allen* (1959), 17 Ill. 2d 55, 160 N.E.2d 818.) While it is error for "mug shots" to be shown to the jury where they have no probative purpose, they may be admitted for the purpose of demonstrating how defendants could have been identified even though there is incidental indication of a prior arrest. (*People v. Woodruff* (1978), 62 Ill. App. 3d 949, 379 N.E.2d 907.) The primary issue in this case was the identity of the two individuals who purchased gasoline placed in the can. Liggons' testimony concerning immediate identification of defendants through the pictures was probative of his clear and positive identification. *People v. Morano* (1979), 69 Ill. App. 3d 580, 387 N.E.2d 816.

Defendants argue that it was error for the court to permit the prosecutor to refresh the memory of Liggons from police reports because it had not been established that the witness' recollection was exhausted. The question was whether the witness recalled what he had told the police some months before concerning the description of the car and the defendants. The response was vague, and the witness was asked if the police reports would refresh his recollection. Whatever the significance of defendants' objection at this moment in trial, it is apparent that upon the

full record any alleged error was harmless. In the defense evidence it is admitted that the defendants purchased gasoline at the Owens station while passengers were in the car of Karnes, and engaged in the first purchase of gasoline which Liggons described. One cannot find a genuine issue of fact as to whether Liggons had seen both the defendants and the automobile on the date in question. In that context, there is no claim that the witness had misidentified defendants because they had not actually been at the Owens station on the early morning in evidence.

■■ A review of the testimony shows that Liggons' memory of the conversation was virtually nonexistent as to what was stated. A witness may refresh and assist his memory by use of a written memorandum when he is unable to remember relevant facts even though the writing is not prepared by the witness if, after inspecting the writing, the witness can speak of facts from his own recollection. (*People v. Bean* (1978), 63 Ill. App. 3d 264, 379 N.E.2d 723.) Although there was possibly inadequate foundation for refreshing the witness' recollection, it cannot be said under the circumstances that the defendants were prejudiced.

Defendants argue several matters regarding physical evidence found at the time of the fire. Officials examining the scene found a wrapper or package for a cupcake on the roof of the tavern, as well as a five-gallon can. Soil samples were also taken and certain laboratory tests were made. A residue of gasoline in the can was tested in comparison with gasoline samples from the Owens pumps.

At the time of trial the gasoline samples, the pastry wrapping, and the soil samples were not available. The record discloses that on September 25, 1978, the prosecution advised defendants that the physical evidence was available for examination. Defendants moved to examine such evidence on January 22, 1979. A stipulation discloses that the samples of gasoline, the wrapper and the soil samples were destroyed on November 9, 1978. The police requested such destruction because of the hazard in storing gasoline in the evidence locker. The record conflicts as to whether defense counsel agreed to the destruction. Defendants argue reversible error in the denial of their motion to exclude testimony concerning the tests of these items.

Defendants admit that the record shows that they were not diligent in seeking examination and they have not shown that such items would be evidence favorable to them.

The forensic laboratory tests did not establish any identification of the gasoline residue in the can. The witness could not determine whether the samples were leaded or unleaded. The most that he could say is that the residue in the can and the sample from the Owens unleaded pump "could have had a common source."

Similarly, we find no reversible error in the failure to preserve the wrapper of the cupcake. While it would be admissible as an item of physical evidence found or associated with the fire, no evidence in the record connects the wrapper with defendants. While there is testimony that a defendant purchased snacks from a vending machine at the Owens station, the record is clear that this item was not purchased from the vending machine at that place. Defendants, in fact, argued to the jury that the prosecution had presented no evidence connecting the wrapper with either defendant.

The facts in this case are distinguishable from those in *People v. Taylor* (1977), 54 Ill. App. 3d 454, 369 N.E.2d 573, and *People v. Dodsworth* (1978), 60 Ill. App. 3d 207, 376 N.E.2d 449. In those cases concerning possession of controlled substances, the nature and identity of the substance alleged to be contraband was a necessary element in the case for the prosecution. Since defendants, in those cases, "could not make independent tests of the substance as contraband" and, because those courts recognized that the accuracy and conclusiveness of the tests performed differed, the defendants were denied their right to confront evidence against them. Here, the nature of the accelerant is not an element of the offense, and there is no genuine issue than that gasoline was used at the scene of the fire. The expert did not undertake to say whether the gasoline in the can was leaded or unleaded, or identify it with defendants. Hence, we conclude that there is no reversible error.

■■ Defendants argue matters of asserted prejudicial argument to the jury by the prosecutor. With but one exception, the defendants failed to object to the statements now asserted to be error. The post-trial motion contains a single unspecific statement that the prosecutor referred to improper and erroneous matters designed to prejudice the jury. At the hearing upon the motion defendants waived any statement or argument. Thus, the matters now asserted to be grounds for a new trial were never presented to the trial court. It is proper to deem such matters to have been waived. *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.

■■ Without addressing all of the allegedly objectionable arguments that were not otherwise cured by an objection sustained by the court, we consider the prosecution's comments that the defense undertook to establish a "red herring" and the statement that Liggons had come from Missouri to testify because "he was a good citizen."

■■ It has been held that referring to the defense case as a "red herring" is not reversible error. *People v. Tolefree* (1973), 14 Ill. App. 3d 754, 303 N.E.2d 555; *People v. Galloway* (1979), 74 Ill. App. 3d 624, 393 N.E.2d 608.

■■ Liggons had failed to appear as a witness and ultimately a warrant

was issued and he was returned by police officers to testify at the trial. The facts concerning his return were testified to by a police officer. The remark of the prosecutor was an inexcusable misrepresentation.

Improper remarks in argument do not constitute reversible error unless they produce substantial prejudice to the defendant. (*People v. Nilsson* (1970), 44 Ill. 2d 244, 255 N.E.2d 432.) Substantial prejudice only results from improper argument when the verdict would have been different in the absence of such argument. (*People v. Lyons* (1974), 26 Ill. App. 3d 193, 324 N.E.2d 677.) Since the jury heard the testimony that Liggons was brought back under process as a witness at trial, and since the jury heard defendants' countervailing argument as to the facts in evidence, we cannot find that there was such prejudice as to constitute reversible error.

We have examined defendants' numerous claims of improper argument, to which no objection was made at trial and not preserved in the post-trial motion, and conclude that there is no plain error which requires reversal.

The defendants argue that since the evidence presented to the jury was circumstantial only, it was error for the trial court to refuse to give the second paragraph of Illinois Pattern Jury Instructions, Criminal, No. 3.02 (1968), with the language:

> "[You should not find the defendant guilty unless the facts and circumstances proved exclude every reasonable theory of innocence.]"

The prosecution persuaded the trial court that Liggons' testimony which identified the gasoline can constituted such direct testimony that it was unnecessary to give the second paragraph of the instructions. We agree with defendants that the evidence of guilt was all circumstantial.

The jury was instructed as to the presumption of innocence, that the defendants were not required to prove themselves innocent, and that the prosecution must prove defendants guilty beyond a reasonable doubt. The language of the omitted paragraph is essentially a restatement that defendants must be proved guilty beyond a reasonable doubt. In *People v. Hammers* (1976), 35 Ill. App. 3d 498, 341 N.E.2d 471, the court examined the history of the instruction and concluded that courts of review are reluctant to consider that the failure to give the quoted paragraph of the instruction is reversible error. That opinion adopted the views of cited cases that reversal is not required unless it appears that justice had been denied, or that the verdict resulted from such error. To the same effect is the opinion in *People v. Garcia* (1981), 95 Ill. App. 3d 792, 420 N.E.2d 482. It has been held that the same conclusion controls where the instruction has been requested. *People v. Boose* (1978), 65 Ill. App. 3d 127, 382 N.E.2d 532.

Defendants urge that the trial court erred in ordering restitution to be made by the defendants because a hearing upon such question was never held, and the court did not make a finding that defendants were financially able to make restitution. Section 5—5—6 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—6) provides that if restitution is part of the disposition:

> "(a) A pre-sentencing hearing shall be held to assess the financial capacity of the defendant to make restitution as well as to determine the amount and conditions of payment at the court's discretion."

In *People v. Abraham* (1980), 89 Ill. App. 3d 786, 412 N.E.2d 45, it was held that it was a matter of the trial court's discretion to hold a hearing upon the issue. In *People v. Pitts* (1980), 83 Ill. App. 3d 738, 404 N.E.2d 857, it was held that the failure of the trial court to hold a hearing of the defendant's ability to make restitution did not deprive the trial court of jurisdiction to make such order, and where, as here, a hearing upon the ability to make restitution was not requested a holding of such hearing is subject to waiver. (*Pitts; People v. Wilson* (1980), 87 Ill. App. 3d 544, 408 N.E.2d 1209, *appeal denied* (1980), 81 Ill. 2d 598.) We note that at the hearing in aggravation and mitigation the defendants testified and counsel argued that the evidence showed that they were employable.

The prosecution concedes that as to defendant Cross, the trial court erred in its order seizing a bail deposit to apply upon the value of the services of the public defender, and that such order must be reversed by reason of the authority of *People v. Cook* (1980), 81 Ill. 2d 176, 407 N.E.2d 56.

At the sentence hearing the trial judge referred to the presentence report and made inquiry concerning a statement that the victim of a battery for which Cross was convicted had died. The trial court was advised that defendant had been charged with murder but that the jury verdict convicted him of battery rather than murder. The trial judge then stated:

> "For the record, the court will simply note that the victim of the battery died and will not take into account the charges which were not proved."

The trial court's statement of the perimeters of his consideration is at best ambiguous and uncertain. The court again noted the purported distinction in imposing a maximum sentence upon Cross. While the record supports a conclusion that defendant had a substantial history of violent conduct, it is impossible within his phraseology to determine what weight the trial court gave to the death noted.

In *People v. Gant* (1974), 18 Ill. App. 3d 61, 309 N.E.2d 265, the trial judge, in substance, considered the fact that the victim of a robbery died

two days after the offense. Defendant was neither charged, nor convicted, with causing that death. The opinion stated:

> "[B]ut where the record shows that the judge allowed his determination of what sentence to impose to be affected by incompetent evidence, then we must vacate the sentence [citation]. * * * The defendant was 'clothed in a presumption of innocence' regarding the death of the complaining witness, and it was therefore prejudicial to him when the trial judge imposed a sentence based at least in part on his belief that the defendant was somehow responsible for her death [citation.]" (18 Ill. App. 3d 61, 66-67, 309 N.E.2d 265, 268-69.)

In *People v. Maldonado* (1980), 80 Ill. App. 3d 1046, 400 N.E.2d 656, defendant was tried and convicted of robbery. The evidence disclosed hearsay statements that the victim never recovered and became unable to continue his employment. The reviewing court determined that it was improper for the trial judge to consider such alleged fact, as no causal connection was established in the record between the robbery and the asserted injuries. In accordance with the authority of the cited opinions, we conclude that the sentence of the defendant Cross should be vacated and remanded for a new sentence hearing.

For the reasons set forth, the conviction and sentence of the defendant Hunt are affirmed; the conviction of the defendant Cross is affirmed; the sentence imposed upon the defendant Cross is vacated and remanded for a new sentence hearing; the order applying bail deposit of defendant Cross to reimbursement for the services of the public defender is reversed.

Affirmed in part, reversed in part, and remanded with directions.

GREEN and WEBBER, JJ., concur.