THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
ANDRE L. MOSLEY, Defendant-Appellee.

Fifth District    No. 79-262

Opinion filed August 21, 1980.

Clinton J. Thurston, State's Attorney, of Cairo (Raymond F. Buckley, Jr., and Stephen J. Maassen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

John H. Reid and Richard J. Bennett, both of State Appellate Defender's Office, of Mt. Vernon, for appellee.

Mr. JUSTICE WHITE delivered the opinion of the court:

This is an appeal by the People from an order of the Circuit Court of Alexander County quashing a search warrant and suppressing evidence pursuant to Supreme Court Rule 604(a)(1) (73 Ill. 2d R. 604(a)(1)).

On February 9, 1979, a search warrant was issued for the search of the defendant and of the premises located at Room 8, Roslyn Hotel, Cairo, Illinois. Attached to the complaint for search warrant was the affidavit of Robert C. Tolbert:

> "While investigating a burglary which occurred at the Roslyn Hotel, 611 Washington Ave., Cairo, Alexander Co., Illinois, reported to Cairo Police Department by Darius Whitson, at 3:59 p.m. on February 9, 1979, affiant talked to a confidential informant who was a member of the public, and a roomer in the aforesaid Roslyn Hotel who has related detailed information to me about a robbery at Egyptian Music on 1/10/79, not commonly known to the public as follows:
>
> That Andre L. Mosley and Lorrie Ann Jones, personally known by said confidential informant were present as customers in said Egyptian Music Store when the aforesaid robbery was in progress, that during same or immediately thereafter Mosley and Jones picked up

the herein described television set and carried same to Room #8 of the Hotel Roslyn where it has since remained, and informant has seen it there many times. Informant gave accurate description of color, size, and brand name of said T. V. and says overheard Andre Mosley state that Mosley and Lorrie Ann Jones stole the T. V. in the manner above described. An eyewitness, Debbie Severs, saw a similar T. V. being carried between two black subjects in the vicinity and at the time of said Egyptian Music robbery going west on Eight Street (near Egyptian Music and in the direction of Hotel Roslyn). Same information was obtained from another eye-witness bank employee, Carolyn Pont. Clayton Bierbauer, temporary manager, relates that he has seen a similar T. V. in Room #8 while making repairs in the room. That on February, 1979, the same aforesaid confidential informant personally observed Andre L. Mosley and Lorrie Ann Jones break the door of the Hotel Roslyn Office and saw both of them enter the office. Said informant has on many occasions seen several small bags of cannabis, and as recently as 2-6-79 in said Room #8 on a shelf-type structure with cannabis on top shelf, and money on bottom shelf."

The trial court in arriving at this decision to quash the warrant and suppress the evidence apparently decided the words "confidential informant who was a member of the public, and a roomer in the aforesaid Roslyn Hotel * * *" were not sufficiently reliable for the issuance of the warrant. In his opinion, which is part of the record herein, he stated:

"I mean, who is a member of the public and roomer in the hotel and when we say confidential informant, I feel the courts in Illinois have said that when that type of language is used, you have got to go further, and you have got to state some reliability * * *" and, also, "I feel that the affidavit is not sufficient on its face, especially to the second of the two prong aspect of the *Aguilar* case * * *."

In *Aguilar v. Texas* (1964), 378 U.S. 108, 114, 12 L. Ed. 2d 723, 729, 84 S. Ct. 1509, 1514, Justice Goldberg, in commenting on the affidavit therein, stated:

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant * * *, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed * * * was 'credible' or his information 'reliable'."

From this language, the now famous "*Aguilar's* two pronged test" of "underlying circumstances" and "credibility" of the informant or "reli-

ability" of his information has hit the law with the force of a full blown tropical hurricane. "We are, then, required to delineate the manner in which Aguilar's two-pronged test should be applied in these circumstances." *Spinelli v. United States* (1969), 393 U.S. 410, 413, 21 L. Ed. 2d 637, 642, 89 S. Ct. 584, 587.

In applying the "two pronged test" to the policeman's affidavit, we should not judge it as an entry in an essay contest, but use a commonsense evaluation. (See Justice Fortas's dissent in *Spinelli*. See also *People v. McGrain* (1967) 38 Ill. 2d 189.) In this case we have before us the narrow issue of whether or not the affidavit shows sufficient reliability of the informant or his information for the judge to issue the search warrant in question. We are of the opinion that it does. This case is not unlike *People v. Isenberg* (1977), 52 Ill. App. 3d 426. In that case the affiant stated in his affidavit that he talked with a citizen who refused to identify himself, that the said citizen was looking for a person who sold LSD to his brother, that the citizen informant was with his brother at a time of purchase of LSD in Apartment 103, at 5054 North Winthrop Avenue in Chicago and that the citizen described the seller as a white male about 40 years of age. The officer then made an independent investigation and found that the defendant occupied the apartment in question, had frequent visitors, matched the description given by the informant, examined the police files for an arrest record and found an arrest record for narcotic offenses, talked to other officers who had been informed about illegal activity at the defendant's apartment and made numerous surveillances of the defendant's apartment.

The court held that the officer's investigation activities, including personal observations of activities on the subject premises, sufficiently established the reliability of the information provided to him by the informant. In the case at bar, the investigating officer did not rely solely upon the information given to him by the "confidential informant who was a member of the public and a roomer in the aforesaid Roslyn Hotel," but personally investigated and found eye-witnesses Debbie Severs, and Carolyn Pont, from whom he had obtained information concerning the television set. Further, the investigating officer obtained information from one Clayton Bierbauer, who told the officer that he had been in the room of the suspects, and had seen a similar television in the said room

In *People v. Thomas* (1975), 62 Ill. 2d 375, our supreme court stated:
> "In *Ventresca* the court said that 'the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the court's cases are to be followed and the constitutional policies served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They

are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts towards warrants would tend to discourage police officers from submitting their evidence to a judicial officer before acting.' [Citations.] The court went on to state: 'Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. [Citations.]' " 62 Ill. 2d 375, 379-80.

Our supreme court has also stated that "[p]robable cause means simply that the facts and circumstances within the knowledge of the affiant, and of which he has reasonably trustworthy information, were sufficient in themselves to warrant a man of reasonable caution to believe that the law was being violated and that evidence of it was in the premises or vehicle or on the person to be searched." (*People v. Francisco* (1970), 44 Ill. 2d 373, 376.) "The constitutional mandate that 'no warrant shall issue without probable cause' neither requires a showing of guilt beyond a reasonable doubt [citation] nor commands a naive evaluation of the facts by the judicial officer who issues the warrant." *People v. York* (1963), 29 Ill. 2d 68, 70.

The fourth amendment of the United States Constitution states "no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." In discussing these fourth amendment rights the Supreme Court in *Dalia v. United States* (1979), 441 U.S. 238, 255, 60 L. Ed. 2d 177, 191, 99 S. Ct. 1682, 1692-93, stated:

"Finding these words to be 'precise and clear,' [citations] this Court has interpreted them to require only three things. First, warrants must be issued by neutral, disinterested magistrates. [Citations.] Second, those seeking the warrant must demonstrate to the magistrate their probable cause to believe that 'the evidence sought will aid in a particular apprehension or conviction' for a particular offense. [Citation.] Finally, 'warrants must particularly describe the

"things to be seized" ' * * *. [Citation.]" Article 1, section 6 of the 1970 Illinois Constitution contains the same language almost verbatim.

We recognize that complaints for search warrants and accompanying affidavits are sometimes drafted by police officers with little or no legal training and sometimes without the benefit of formal education beyond that of the high school level. It would be ideal if a formal hearing were held in the serene atmosphere of the courtroom, with the affiant, the informant or informants, be they citizen informants, paid informants or confidential informants, and the court's personnel present. This procedure would at least give the issuing judge an opportunity to observe affiant and the informants and to pass on their credibility. Generally speaking, this procedure is not utilized, especially during night hours or where time is of the essence.

Search warrants are not always issued in the courtroom or the courthouse. Sometimes the parties appear at the judge's home for the judge's signature after probable cause is found. In one case the court approved altering the warrant after securing approval by the issuing judge by telephone communication for such alteration. (*People v. Trantham* (1977), 55 Ill. App. 3d 720.) As a general rule, someone from the State's Attorney's office, and the affiant with the complaint and affidavit, are present and the decision whether probable cause exists for the issuance of the search warrant is made based on the complaint and affidavit. As a practical matter, the issuing judge, in a great majority of the cases, would not be assisted in any way if the informant were named. Generally speaking, the issuing judicial officer is not aided by the name of an informant he does not know and cannot go outside the face of the complaint to determine the reliability thereof. *People v. Hammers* (1976), 35 Ill. App. 3d 498.

The affidavit in this case would not pass scrutiny by a freshman high school English teacher but it does pass muster by the principles as stated by the Supreme Court of the United States and the Supreme Court of the State of Illinois, especially the first two of the "three pronged" test of *Dalia*.

The remaining issues as set forth in defendant's motion to quash search warrant and to suppress evidence illegally seized are not before this court. The defendant requests we decide them based upon the record before the court. We are of the opinion the better procedure would be to remand to the trial court for further hearing.

Accordingly, we reverse and remand.

JONES, P. J., and KASSERMAN, J., concur.